UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NICHOLAS RODRIGUEZ,

Plaintiff,

v.

CHRISTOPHER BRACCO, Police Officer, in personal & official capacity; and J. HIVACEK, lieutenant with Binghamton City Police, in personal & official capacity,

3:26-CV-1119 (BKS/ML)

Defendants.

---

APPEARANCES: OF COUNSEL:

NICHOLAS RODRIGUEZ
Plaintiff, *Pro Se*
Broome County Correctional Facility
Post Office Box 2047
Binghamton, New York 13902-2047

MIROSLAV LOVRIC, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

Plaintiff Nicholas Rodriguez ("Plaintiff") commenced this *pro se* action against Defendants Christopher Bracco and J. Hivacek (collectively "Defendants") by filing a complaint together with an application to proceed *in forma pauperis* ("IFP") and an inmate authorization form. (Dkt. Nos. 1, 10, 11.) For the reasons set forth below, Plaintiff's second amended IFP application is granted and I recommend that the Complaint be dismissed for failure to state a claim upon which relief may be granted.

## I. BACKGROUND

Construed as liberally[1] as possible, the Complaint alleges violations of Plaintiff's rights by Defendants. (*See generally* Dkt. No. 1.)

More specifically, the Complaint alleges that on February 5, 2026, Plaintiff was stopped by Defendant Bracco because Plaintiff had a hoodie style sweatshirt on. (Dkt. No. 1 at 4.) Plaintiff alleges that the stop was prejudicial and biased. (*Id.*) The Complaint appears to allege that based on Plaintiff's past poor experiences with Defendants he tried to get away and "The officer" shot Plaintiff in the leg. (*Id.*) Plaintiff alleges that he suffers severe PTSD, depression, pain, and nightmares as a result of this interaction. (*Id.*)

Based on these factual allegations, the Complaint asserts the following two claims: (1) a claim of excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983; and (2) a claim of cruel and unusual punishment in violation of the Eighth Amendment and 42 U.S.C. § 1983. (Dkt. No. 1 at 5.) As relief, Plaintiff seeks $8,000,000.00 in damages and that "[t]he officers . . . be terminated or retrained at the state[']s expen[s]e." (*Id.*)

Plaintiff seeks leave to proceed IFP. (Dkt. No. 10.)

## II. PLAINTIFF'S SECOND AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2] "Although an indigent,

---

[1] The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2] Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon

incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 10 at 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District.[3] (Dkt. No. 11.)

Accordingly, Plaintiff's second amended application to proceed with this action IFP is granted.[4] (Dkt. No. 10.)

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

---

which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

[3] Plaintiff is reminded that proceeding IFP is always a privilege, not an unqualified right. Misuse of the IFP process by a litigant, such as repetitive filing of frivolous lawsuits, may result in the denial of a request to proceed IFP.

[4] Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983.

### A. Claims Against Defendant Hivacek

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

Here, the Complaint lists Defendant Hivacek as a defendant (Dkt. No. 1 at 2) but the body of the Complaint fails to include factual allegations plausibly suggesting that he took—or failed to take—any action that violated Plaintiff's constitutional rights. (*See generally* Dkt. No. 1.)

As a result, I recommend that Plaintiff's claims against Defendant Hivacek be dismissed for failure to state a claim upon which relief may be granted. *See*, *e.g., Cipriani v. Buffardi*, 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (Kahn, J.) (citation omitted) ("A complaint cannot be maintained against a defendant who is listed in the caption, but against whom no facts are alleged in the body of the complaint.").

### B. Claims Against Defendant Bracco[5]

#### 1. Excessive Force

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on state and municipal officers such as Defendants.

---

[5] To the extent that the Complaint is construed as asserting claims against the Binghamton Police Department, I recommend that they be dismissed. It is well settled that municipalities can be held civilly liable under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Specifically, local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the [alleged unconstitutional action] implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. However, "a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, *3 (N.D.N.Y. Jan. 7, 2019) (citing *Krug v. Cnty. of Rensselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, *2 (N.D.N.Y. Nov. 26, 2014); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999)).

*See Tsinberg v. City of New York*, 20-CV-0749, 2021 WL 1146942, at *10 (S.D.N.Y. Mar. 25, 2021) (citing *City of Ontario v. Quon*, 560 U.S. 746, 750 (2010)).

"The Fourth Amendment, which protects against unreasonable seizures, governs a claim that excessive force was used in connection with an arrest." *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 388, 391-95 (1989)). "Claims that police officers used excessive force during an arrest are analyzed under the Fourth Amendment's reasonableness standard." *Brooks v. Whiteford*, 384 F. Supp. 3d 365, 369 (W.D.N.Y. 2019) (citing *Graham*, 490 U.S. at 395). The "application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them." *May v. Levy*, 659 F. Supp. 3d 323, 337 (E.D.N.Y. 2023) (quoting *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004)).

The Complaint fails to allege facts plausibly suggesting that Defendant Bracco used any force against Plaintiff. (*See generally* Dkt. No. 1.) The Complaint alleges that Defendant Bracco "stopped" Plaintiff and that an unidentified officer "shot [Plaintiff] in the leg" but fails to allege that Defendant Bracco used any force against Plaintiff. As a result, I recommend that Plaintiff's excessive force claim against Defendant Bracco be dismissed for failure to state a claim upon which relief may be granted.

**2. Cruel and Unusual Punishment**

The Eighth Amendment protects against cruel and unusual punishment. U.S. Const. amend. VIII. "These protections of the Eighth Amendment only apply to a person who has been criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the investigation and arrest of suspects prior to conviction and sentencing."

*Spicer v. Burden*, 564 F. Supp. 3d 22, 31 (D. Conn. 2021) (citing *Whitley v. Albers,* 475 U.S. 312, 318-19 (1986); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

The allegations contained in the Complaint appear to relate to an incident that occurred during Plaintiff's arrest and before any conviction or sentence. As a result, "any claim purportedly brought by [P]laintiff under the Eighth Amendment for cruel and unusual punishment must be dismissed." *McNair v. Utica Police Dep't*, 23-CV-0699, 2023 WL 4935993, at *6 (N.D.N.Y. June 26, 2023) (Baxter, M.J.), *report and recommendation adopted*, 2023 WL 4931609 (N.D.N.Y. Aug. 1, 2023) (Hurd, J.).

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

Given Plaintiff's *pro se* status and that this is Plaintiff's first pleading, out of an abundance of caution, I recommend that Plaintiff be granted leave to amend his pleading.

If Plaintiff chooses to file an amended complaint, he should note that in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

PLAINTIFF IS ADVISED THAT HE SHOULD NOT SEEK TO FILE A MOTION TO AMEND HIS COMPLAINT UNTIL CHIEF UNITED STATES DISTRICT JUDGE SANNES RULES ON THIS COURT'S RECOMMENDATIONS WITH RESPECT TO PLAINTIFF'S

---

6 *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

COMPLAINT. ANY AMENDED COMPLAINT OR MOTION TO AMEND BEFORE CHIEF JUDGE SANNES'S DECISION WITH RESPECT TO THIS COURT'S RECOMMENDATIONS WILL BE STRICKEN AS PREMATURE AND WILL NOT BE CONSIDERED BY THE COURT. As noted below, however, Plaintiff may file objections to this Court's recommendations.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's second amended application to proceed *in forma pauperis* (Dkt. No. 10), is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 11) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 11) to the Financial Deputy of the Clerk's office; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED with leave to replead** pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order and report-recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

---

[7] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8] Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: October 29, 2026
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

8 If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2008 WL 857528
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Richard AUSTIN, Plaintiff,
v.
Brian PAPPAS, John Does, Yonkers Police Commissioner Charles C. Coles, Westchester County, Defendants.

No. 04-CV-7263 (KMK)(LMS).
|
March 31, 2008.

**Attorneys and Law Firms**

Mr. Richard Austin, Stormville, NY, pro se.

Rory Carleton McCormick, Esq., Corporation Counsel, City of Yonkers, Yonkers, NY, for Defendants.

*ORDER ADOPTING REPORT & RECOMMENDATION*

KENNETH M. KARAS, District Judge.

***1** Richard Austin ("Plaintiff") filed this suit pursuant to 42 U.S .C. § 1983 ("Section 1983") against Yonkers Police Officer Brian Pappas ("Defendant Pappas"), several John Doe Yonkers Police Officers ("John Doe Defendants"), former Yonkers Police Commissioner Charles C. Cola ("Defendant Cola") (whose name is misspelled in Plaintiff's Complaint as Charles C. Coles), and Westchester County (collectively, "Defendants"), alleging violations of Plaintiff's civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, along with various supplemental state law claims.[1] (Compl.¶¶ 17, 19.) Plaintiff alleged that these violations occurred when Defendants failed to protect Plaintiff from Franklyn Kelley, a private individual who physically attacked Plaintiff during the course of Plaintiff's May 16, 2003 arrest. (*Id.* ¶ 10.) Plaintiff alleged that Defendant Pappas and the John Doe Defendants handcuffed him and pinned him to the ground while Franklyn Kelley repeatedly kicked and punched Plaintiff in the face. (*Id.* ("The officers did nothing to protect the plaintiff from this vicious assault, even though plaintiff was helpless and in their custody [.]").) Defendants moved for summary judgment, and this Motion was referred by Judge McMahon to Chief Magistrate Judge Lisa M. Smith for review pursuant to 28 U.S.C. § 636(b)(1). On August 2, 2007, Magistrate Judge Smith issued a thorough Report and Recommendation ("R & R"), concluding that this Court should grant Defendants' Motion for Summary Judgment on the ground that Plaintiff has failed to demonstrate that there exists a genuine issue of material fact as to whether his constitutional rights were violated. Plaintiff was advised of his right to file objections to the R & R, but he did not do so.

A district court reviewing a report and recommendation " 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.' " *Donahue v. Global Home Loans & Fin., Inc.,* No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007) (quoting 28 U.S.C. § 636(b)(1)(C)). Under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, parties may submit objections to a magistrate judge's report and recommendation. The objections must be "specific" and "written," and must be made "within 10 days after being served with a copy of the recommended disposition." Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

Where a party does not submit an objection, " 'a district court need only satisfy itself that there is no clear error on the face of the record.' " *Donahue,* 2007 WL 831816, at *1 (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985)). In addition, a party's failure to object waives that party's right to challenge the report and recommendation on appeal. *See Fed. Deposit Ins. Corp. v. Hillcrest Assocs.,* 66 F.3d 566, 569 (2d Cir.1995) ("Our rule is that 'failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.' " (quoting *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989))).

***2** Here, Plaintiff has not filed objections to the R & R. Accordingly, the Court has reviewed the R & R for clear error only. In so doing, the Court adopts the conclusion reached in the R & R that Defendants' Motion for Summary Judgment should be granted, but the Court does so in part on different grounds than those relied on in the R & R.

First, the Court agrees with Magistrate Judge Smith that Defendants' noncompliance with Local Civil Rule 56.2 should be overlooked because any prejudice resulting from noncompliance was cured by the following: (i) Magistrate Judge Smith advised Plaintiff of the nature of summary judgment during a March 23, 2007 conference; and (ii) Magistrate Judge Smith annexed a Rule 56.2 notice to the

R & R, a document to which Plaintiff was free to file objections. *See Narumanchi v. Foster,* No. 02-CV-6553, 2006 WL 2844184, at *2 (E.D.N.Y. Sept. 29, 2006) (refusing to deny defendant's motion for summary judgment based on failure of defendant to comply with Local Civil Rule 56.2 because "[a]ny prejudice to *pro se* plaintiffs [was] cured" by court's actions).

As expressed in the R & R, though Plaintiff did not file any opposition to Defendants' Motion for Summary Judgment, Defendants were still required to meet their burden of demonstrating to the Court that "no material issue of fact remains for trial." *See Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001). The Court finds no clear error in Magistrate Judge Smith's determination that Defendants satisfied this burden.

With respect to Defendants Pappas and Cola, the Court finds that Plaintiff has failed to offer any evidence demonstrating that they were personally involved in the alleged violation of Plaintiff's constitutional rights. The " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir.2004) (quoting *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). For purposes of Section 1983 liability, personal involvement can be established by evidence that:

> '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.'

*Id.* at 127 (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)); *accord Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 753 (2d Cir.2003); *Schiller v. City of New York,* No. 04-CV-7922, 2008 WL 200021, at *4 (S.D.N.Y. Jan. 23, 2008); *Fair v.. Weiburg,* No. 02-CV-9218, 2006 WL 2801999, at *4 (S.D.N.Y. Sept. 28, 2006). Further, a Section 1983 plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986); *see also Fair,* 2006 WL 2801999, at *4 (citing *Bass* ).

***3** In support of their Motion for Summary Judgment, Defendants submitted evidence that Defendant Pappas did not directly participate in the arrest of Plaintiff, but he instead arrested Plaintiff's accomplice. For example, on April 8, 2004, at a hearing before the Honorable Richard A. Molea of the Westchester County Court, Defendant Pappas testified that he remained with Plaintiff's accomplice while other officers arrested Plaintiff. (Defs.' Affirmation in Supp., Ex. J, 50-51.) Further, in response to interrogatories served on him by Plaintiff, Defendant Pappas stated that he "did not observe what transpired during the course of plaintiff's arrest." (*Id.,* Ex. L.) Finally, Defendants offer a police report indicating that "Pappas was detaining [Plaintiff's accomplice] in the garage area, as additional units arrived and placed [Plaintiff] into custody." (*Id.,* Ex. C.)

Plaintiff has failed to offer any evidence refuting Defendant Pappas' version of events. In other words, Plaintiff has offered no evidence demonstrating that Defendant Pappas was actually one of the officers who arrested him and allegedly pinned him to the ground while Kelley assaulted him. In fact, during his deposition testimony, Plaintiff admitted that he was not sure whether Defendant Pappas was one of the police officers who arrested him, and that the reason Defendant Pappas was named as a defendant in the present suit was because Plaintiff had seen his name on Plaintiff's felony complaint. (*Id.,* Ex. G, 32-35.) As such, the unrefuted evidence before the Court demonstrates that Defendant Pappas was not one of the officers directly involved in Plaintiff's arrest. Plaintiff therefore has failed to satisfy a prerequisite to liability under Section 1983-namely that Defendant Pappas had personal involvement in the alleged violation of Plaintiff's constitutional rights. *See Back,* 365 F.3d at 122. Thus, Plaintiff's claim against Defendant Pappas must be dismissed.

Plaintiff alleged that Defendant Cola, Yonkers Police Commissioner at the time of Plaintiff's 2003 arrest, violated Plaintiff's constitutional rights by "authoriz[ing], tolerat[ing], as institutionalized practices, and ratif[ying] the misconduct

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

[of Defendant Pappas and John Doe Defendants].” (Compl.¶ 14.) More specifically, Plaintiff charges Defendant Cola with failure to properly: (1) discipline subordinate officers; (2) take adequate precautions in hiring subordinate officers; (3) report criminal acts by police personnel to the Westchester County District Attorney; and (4) establish a system for dealing with complaints about police misconduct. (*Id.*) Plaintiff does not assert that Defendant Cola directly participated in the violation of his constitutional rights; instead, Plaintiff urges the Court to find Defendant Cola liable under Section 1983 based on his role as supervisor of Defendant Pappas and the John Doe Defendants.

“It is well settled, however, that the doctrine of respondeat superior standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity.” *See Hayut,* 352 F.3d at 753 (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). Instead, it is necessary to establish a supervisory official's personal involvement in the alleged constitutional violation. *See id.; Fair,* 2006 WL 2801999, at *4.

***4** Plaintiff has failed to provide the Court with any evidence from which a reasonable jury could conclude that Defendant Cola was personally involved in the alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no evidence demonstrating that Defendant Cola was aware of and failed to remedy constitutional violations by subordinate officers, or that he acted in a grossly negligent or deliberately indifferent manner in supervising or training subordinate officers. There is also no evidence in the record to support a theory that Defendant Cola created a policy or custom that fostered and led to the alleged violation of Plaintiff's rights. *See Hayut,* 352 F.3d at 754 (finding as fatal to plaintiff's Section 1983 claim the fact that there existed “no evidence that, after becoming aware of the alleged harassment, any of the [supervisory officials] failed to respond or remedy the situation, that any of these [supervisory officials] created or allowed a policy to continue under which alleged harassment could occur, or that they were grossly negligent in monitoring [the alleged harasser's] conduct”); *Harris v. City of New York,* No. 01-CV-6927, 2003 WL 554745, at *6 (S.D.N.Y. Feb. 26, 2003) (“[P]laintiff has put forth no evidence pointing to defendant ['s] personal involvement in plaintiff's alleged deprivation of rights .... Plaintiff's conclusory allegations regarding defendant['s] alleged supervisory role, without more, cannot withstand summary judgment.”). Further, nothing in the record, even drawing all inferences in Plaintiff's favor, suggests any tangible connection between Defendant Cola's training or supervision of subordinate officers and the alleged violation of Plaintiff's rights. In fact, the record contains no evidence with regard to Defendant Cola whatsoever. Without such evidence, no reasonable jury could conclude that Defendant Cola had personal involvement in the alleged violation of Plaintiff's constitutional rights, which means that Plaintiff has failed to satisfy a prerequisite to Section 1983 liability, and therefore that Defendant Cola is entitled to summary judgment in his favor. *See Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir.1998) (“After an opportunity for discovery, undisputed allegations that [a] supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case.”).

In sum, the Court finds that Plaintiff has failed to establish the personal involvement of Defendants Pappas and Cola in the alleged violation of his rights. For reasons set forth more fully in the R & R, the Court also dismisses the Complaint as to the John Doe Defendants because Plaintiff's time limit to amend the Complaint in order to substitute in named defendants has lapsed. Therefore, the Court finds it unnecessary to reach the question of whether Plaintiff has adequately established an underlying violation of his constitutional rights. Finally, having determined that no cognizable federal claims exist, the Court will follow Magistrate Judge Smith's recommendation in declining to exercise jurisdiction over the state law claims.

***5** Accordingly, it is hereby:

ORDERED that the Report and Recommendation dated August 2, 2007, is ADOPTED on the grounds set forth in this Order; and it is further

ORDERED that Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants, to terminate Defendant's Motion (Dkt. No. 28), and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 857528


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## Footnotes

1 On August 8, 2005, Plaintiff's claim against Westchester County was dismissed by the Honorable Gerald E. Lynch, to whom this case was initially assigned. On February 28, 2006, the case was transferred to White Plains and reassigned to Judge Colleen McMahon. The case was reassigned to the undersigned on August 6, 2007.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,
v.
Andrew PETERS, Warden, Watertown Correctional Facility; Joseph Williams, Warden, Lincoln Work–Release Center; Francis J. Herman, Senior Parole Officer Interstate Bureau; T. Stanford, Senior Parole Officer; Deborah Stewart, Parole Officer; John Doe # 1, Parole Agent, Watertown Correctional Facility; John Doe # 2, Parole Agent, Lincoln Work Release Center; Susan Bishop, Director of Interstate Compact, South Carolina; Cecil Magee, Parole Officer, South Carolina; Frank Barton, Parole Officer, South Carolina; John McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The Capitol Albany, NY, for defendants Peters, Herman Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant Attorney General, Carl N. Lundberg, Chief Legal Counsel, South Carolina Department of Probation, Columbia, SC, for defendants Bishop, Magee, Barton, McMahan, and Stanford, Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

***1** The above matter comes to me following a Report–Recommendation by Magistrate Judge Daniel Scanlon, Jr., duly filed on April 17, 1997. Following ten days from the service thereof, the Clerk has sent me the entire file, including any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil rights action on November 17, 1995. On February 12, 1996, Magistrate Judge Scanlon ordered Brown to submit an amended complaint alleging the specific acts committed by the individuals named as defendants which Brown claimed violated his constitutional rights. Brown filed an amended complaint on March 21, 1996. In his amended complaint, Brown alleged that defendants violated his rights under the Eighth and Fourteenth Amendments by failing to process properly his interstate compact paperwork, resulting in Brown being imprisoned pursuant to a parole hold when in fact he had never violated the conditions of his parole. For a more complete statement of Brown's claims, see his amended complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On August 19, 1996, defendants Bishop, Magee, Barton, and McMahan made a motion to dismiss the complaint against them or, in the alternative, for summary judgment. Dkt. No. 20. On October 17, 1996, defendants Herman, Stewart, and Stanford made a motion to dismiss for failure to state a claim. Dkt. No 34. On April 17, 1996, Magistrate Judge Scanlon recommended that all defendants' motions to dismiss be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the magistrate judge's report-recommendation, having been granted additional time in which to do so. Dkt. No. 52. In addition, Brown filed on June 9, 1997, a motion for leave to file a second amended complaint and a copy of his proposed amended complaint. Dkt. No. 53. I turn first to the last motion filed, Brown's motion for leave to amend his complaint a second time.

Brown seeks to file a second amended complaint "setting forth in detail the personal involvement of each defendant and how their acts of commission and omission served to deprive plaintiff of Constitutionally secured rights." Dkt. No. 53. The district court has discretion whether to grant leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

***2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

no clear error on the face of the record in order to accept the recommendation").

***3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

***4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

***5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* *LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See* *Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

***6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to “less stringent standards than formal pleadings drafted by lawyers” for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.
Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. “[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.” *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by “continuously breaching [[[their] duty” to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.
Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

***7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's “John Doe” Claims.
In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.
Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1 I note, however, that the report-recommendation would survive even *de novo* review.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,
v.
BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION*[1]

PITMAN, United States Magistrate Judge.

***1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request."[2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> ***2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous,

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

> malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson*[3] *v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

- Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

***3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009).[4]

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury,

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury”). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury.[5]

IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS ***WILL*** RESULT IN A WAIVER OF OBJECTIONS AND ***WILL*** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

## Footnotes

1 At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

2 Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

3 It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services (“DOCS”) is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

4 Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

5 Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,
v.
Harry C. BUFFARDI, Sheriff; Schenectady County Jail; Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

***DECISION and ORDER***

LAWRENCE E. KAHN, U.S. District Judge.

***1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at *1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

***2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order. [1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. ***Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.*** Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. ***Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.*** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

## Footnotes

1 Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4935993
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brandon T. MCNAIR, Plaintiff,
v.
UTICA POLICE DEPARTMENT, et al., Defendants.

6:23-CV-699 (DNH/ATB)
|
Signed June 26, 2023

**Attorneys and Law Firms**

BRANDON T. McNAIR, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

***1** The Clerk has sent to the court for review a pro se complaint filed by plaintiff Brandon T. McNair, in which he has sued various defendants based on several civil rights claims pursuant to 42 U.S.C. § 1983. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

**I. IFP Application**

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application and supporting documents, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)). The court will now turn to a consideration of plaintiff's complaint under the above standards.

**II. Complaint**

***2** Plaintiff alleges that on July 27, 2021 at approximately 10:00 a.m., he was on the "east side" of Utica, New York when the "cops hopped out [and] detained [him and] tried to search [him.]" (Compl. at 4). He further alleges that, based off a general description, the police searched plaintiff because he was "black in a certain area where a man with a gun had been alleged to be there." (*Id.*). Plaintiff was arrested after "running for [his] life in an attempt to keep [the police] from violating [his] rights." (*Id.*). Plaintiff was "thrown in jail" and charged

with "possession of an instrument that was found almost an hour after, under some car in the parking lot of a car shop." (*Id.* at 7).

Plaintiff then states that he appeared at a bail hearing in Oneida County Court, with the defendants District Attorney ("DA") McNamara and Judge Michael L. Dwyer. (Compl. at 7). Plaintiff alleges that when Judge Dwyer learned of plaintiff's intention to post bail, he "then raised it in a clear attempt to make it unreachable post bail reform[.]" (*Id.*). Plaintiff states that he was "denied audience with the Supreme Court and [his] habeas corpus was illegally unheard," having been put "right back in front of [Judge] Dwyer for him to answer[.]" (*Id.*). Plaintiff claims that this is "not how the process works," and that Judge Dwyer "didn't have the authority to answer [his] habeas corpus." (*Id.*).

Plaintiff further alleges that Judge Dwyer and DA McNamara proceeded to "violate [his] rights in every court proceeding leading up to trial." (Compl. at 7). Plaintiff cites to a decision from the Fourth Department relative to his criminal case for the underlying facts surrounding his claims. According to *Matter of McNair v. McNamara*, plaintiff's jury trial commenced on November 1, 2021, at which time a jury was selected and sworn, and three witnesses testified. 206 A.D. 3d 1689, 1690 (4th Dep't 2022). November 2 nd was a holiday, during which the trial was recessed. (*Id.*). On November 3 rd , Judge Dwyer's secretary notified plaintiff's counsel that the Judge had a cold, wanted to make sure it was not COVID-19, he would not be in that day, and the jury would be sent home. (*Id.*). Plaintiff's counsel was notified several days later that the matter would be scheduled for a retrial on November 15 th . (*Id.*). Essentially, the Judge believed a mistrial was necessary because it was "physically impossible" for him to come to court and proceed with the trial, while he waited three to five days for the result of his COVID-19 test. (*Id.*). Over plaintiff's counsel's objections, the mistrial was declared as of November 3 rd . (*Id.*). The Fourth Department ultimately agreed with plaintiff in concluding that there was no "manifest necessity" for the mistrial, and that the county court abused its discretion in granting the mistrial sua sponte. (*Id.* at 1690-92). Accordingly, the government was prohibited from retrying plaintiff on the underlying indictment based on double jeopardy grounds. Liberally construed, this court interprets plaintiff's claims of constitutional violations in the instant complaint to relate to the underlying trial proceedings as described in *Matter of McNair.* Plaintiff also alleges that the police were "selective [and] omitted certain facts to allow the proceedings to continue," and that DA McNamara "also did not reveal certain facts in order to secure an indictment." (Compl. at 7).

Plaintiff alleges damages including mental and physical injuries sustained during his incarceration. (Compl. at 5). He seeks monetary damages in the amount of twenty million dollars, as well as "punitive damages of relieving the officials of their official capacities." (*Id.*).

## DISCUSSION

### III. Sovereign and Judicial Immunities

***3** The complaint must be dismissed as against named defendants Oneida County Courts and Officials and Judge Dwyer, because they are immune from suit. The Second Circuit has ruled that "the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Because the Oneida County Court is a part of the New York State Unified Court System, it is entitled to sovereign immunity. Similarly, judges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity. *See Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (dismissing claim against a Delaware County judge on sovereign immunity grounds). As both the Oneida County Court and Judge Dwyer are arms of the State, they are entitled to Eleventh Amendment immunity, and it is recommended that the complaint against them be dismissed with prejudice.

The complaint against Judge Dwyer in his personal capacity is subject to dismissal on judicial immunity grounds. *See, e.g., Washington v. Ciccone*, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at *4 (N.D.N.Y. July 13, 2021) (Judicial immunity "shields judges from suit to the extent they are sued in their individual capacities[.]"), *report and recommendation adopted*, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021). It is well settled that judges have absolutely immunity for their judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Forrester v. White*, 484 U.S. 219, 225 (1988); *Shtrauch v. Dowd*, 651 F. App'x 72, 73-74 (2d Cir. 2016) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature' ") (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)); *Kim v. Saccento*, No. 21-2865, 2022 WL 9583756, at *2 (2d Cir. Oct. 17, 2022), *cert. denied*, No.

22-732, 2023 WL 2959393 (U.S. Apr. 17, 2023) ("the actions that [plaintiff] complains of – adverse decisions in a criminal proceeding – are plainly judicial in nature"); *Root v. Liston*, 444 F.3d 127, 132 (2d Cir. 2006) (judges who set bail enjoy absolute immunity) (collecting cases). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." *Coon v. Merola*, No. 1:19-CV-394 (DNH/ATB), 2019 WL 1981416, at *3 (N.D.N.Y. Apr. 8, 2019) (citing *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976)), *report and recommendation adopted*, 2019 WL 1978595 (N.D.N.Y. May 3, 2019).

"The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " *Id.* (quoting *Mireles*, 502 U.S. at 11-12). Here, plaintiff has failed to plausibly allege that Judge Dwyer was acting outside of his judicial capacity or in the absence of jurisdiction. To the extent that plaintiff alleges that his habeas corpus petition was not properly before Judge Dwyer, Article 70 of the New York Civil Practice Law and Rules specifically authorizes a petition for the writ to be made to a county judge being or residing within the county in which the petitioner is detained. N.Y. C.P.L.R. § 7002(b)(4). In the absence of any other allegation suggesting that the general rule regarding judicial immunity can be overcome, the court recommends dismissing with prejudice the complaint as against Judge Dwyer in his individual capacity. *See Edwardsen v. Aloi*, No. 5:17-CV-00202 (LEK/TWD), 2017 WL 1283496, at *3 (N.D.N.Y. Mar. 3, 2017) (recommending dismissal with prejudice on judicial immunity grounds), *report and recommendation adopted*, 2017 WL 1283763 (N.D.N.Y. Apr. 5, 2017).

Plaintiff has also included unidentified "officials" of the Oneida County Court as defendants in the caption of his complaint. There is, however, no specific allegation anywhere in the complaint referencing any other court official who was involved in the alleged violations of plaintiff's constitutional rights. In any event, even if plaintiff had identified another court "official" as a defendant, judicial immunity has been extended to " 'certain others who perform functions closely associated with the judicial process.' " *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 288 (W.D.N.Y. 2019) (quoting inter alia *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). Quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." *Butz v. Economou*, 438 U.S. 478, 513 (1978); *see Cleavinger*, 474 U.S. at 201 ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009) ("Judicial and quasi-judicial immunity are both absolute immunities." (citations omitted)). Much like judicial immunity, "[a] defendant entitled to quasi-judicial immunity loses that privilege only if [he or] she acts in the clear absence of all jurisdiction." *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (internal quotation marks and citation omitted). Thus, it is likely that the unidentified court official defendants would also be protected from suit based on the doctrine of quasi-judicial immunity.

## IV. Prosecutorial Immunity

***4** The complaint is also subject to dismissal as against DA McNamara. The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, 27 F.4th 855, 863-64 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)). In *Anilao*, the Second Circuit explained:

> Our cases make clear that prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)(quotation marks omitted). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). For example, a prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial. *See id.*; *Imbler*, 424 U.S. at 431, 96 S. Ct. 984 (concluding that a prosecutor is absolutely immune from a § 1983 suit for damages based on his "initiating a prosecution and ... presenting the State's case"). For that reason, we have held that absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Dory*, 25 F.3d at 83 (cleaned up).

*Id.* at 864. *See also Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (holding that absolute prosecutorial immunity protects a prosecutor for advocacy in connection with a bail application).

"By contrast, prosecutors receive only qualified immunity when performing 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.' " *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and they do not become prosecutorial functions merely because a prosecutor has chosen to participate." *Id.* (interior quotation marks and citations omitted); *see Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) (" '[A]ctions taken as an investigator enjoy only qualified immunity.' ") (quoting *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000)). "Under a functional approach, actions are not shielded by absolute immunity merely because they are performed by a prosecutor. 'A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.' " *Giraldo*, 694 F.3d at 166 (quoting *Buckley*, 509 U.S. at 273).

Liberally construed, in this case plaintiff alleges that DA McNamara violated his rights by "hold[ing] plaintiff in an attempt to retry [him] illegally for 7 months" after the mistrial (Compl. at 7), and for failing to "reveal certain facts in order to secure an indictment" (*id.*). Otherwise, plaintiff generally alleges that DA McNamara violated his rights "in every court proceeding leading up to trial[,] "in the trial [and] after the first trial[.]" (*Id.*). With respect to the indictment, the courts have long held that a prosecutor's determination to bring charges against an individual by presentment of a case to the grand jury is an act by an advocate intimately related to the judicial phase of the criminal process to which absolute prosecutorial immunity applies. *See Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (The act of "knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from [the grand jury] ... lie[s] at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process.") (citing *Imbler*, 424 U.S. at 431 & n. 34); *Pinaud v. County of Suffolk*, 52 F.3d at 1149 (holding district attorneys absolutely immune from claim for malicious prosecution and presentation of false evidence to the grand jury); *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984) ("The presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity...."); *J. & W. Trading & Leasing Inc. v. New York*, No. 5:15-CV-327 (GLS/DEP), 2015 WL 4135961, at *3 (N.D.N.Y. 2015) (granting absolute immunity where prosecutor allegedly presented false testimony before grand jury). Accordingly, plaintiff may not pursue his § 1983 action against DA McNamara based on his alleged failure to disclose evidence to the grand jury.

***5** The court concludes that DA McNamara is also immune from any suit by plaintiff based on his efforts to continue the prosecution of plaintiff's criminal case, although there is certainly less case law involving this scenario. Bearing in mind the standard of determining whether the specific conduct at issue is 'intimately associated with the judicial phase of the criminal process,' the court cannot conclude that DA McNamara's efforts to retry plaintiff's case after Judge Dwyer granted a mistrial runs afoul of the prosecutor's protected function of initiating a prosecution and presenting the State's case. *See, e.g.*, *Davis v. State of N.Y.*, No. 90 Civ. 6170, 1991 WL 156351, at *6 (S.D.N.Y. Aug. 6, 1991) (whatever the defendant prosecutors may have done to delay plaintiff's criminal retrial, "they acted in their capacity as advocates in the state's prosecution ... [and] are entitled to absolute immunity ...."), *aff'd sub nom. Davis v. New York*, 106 F. App'x 82 (2d Cir. 2004); *Russo v. Vermont*, No. 1:10-CV-296, 2011 WL 4537956, at *6, 8 (D. Vt. July 29, 2011) (notwithstanding the plaintiff's claim that the prosecutors in his case were "obsessed and won't let go[,]" their decision "to proceed with a retrial ... is protected by prosecutorial immunity"), *report and recommendation adopted*, 2011 WL 4566303 (D. Vt. Sept. 29, 2011).

There is no evidence that DA McNamara's conduct in this regard fell outside the scope of his function as an advocate. *See Anilao*, 27 F.4th at 865 (" '[A]bsolute immunity must be denied' only where there is both the absence of all authority (because, for example, no statute authorizes the prosecutor's conduct) and the absence of any doubt that the challenged action falls well outside the scope of prosecutorial authority.... Prosecutors thus have absolute immunity in a § 1983 action ... so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description.' ") (citations omitted). In particular, there is no suggestion that DA McNamara's conduct in this respect could be interpreted as an "investigative or administrative task[ ]", for which the

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

prosecutor would only be eligible for qualified immunity. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (quoting *Imbler,* 424 U.S. at 431 n.33); *see also McDonough v. Smith*, No. 1:15-CV-1505 (MAD/DJS), 2022 WL 3279348, at *17 (N.D.N.Y. Aug. 11, 2022) ("Investigative tasks beyond the scope of absolute immunity are those 'normally performed by a detective or police officer.' ") (quoting *Buckley*, 509 U.S. at 273); *Moye v. City of New York*, 11 Civ. 316, 2012 WL 2569085, at *6 (S.D.N.Y. July 3, 2012) ("[T]he Second Circuit has distinguished between 'preparing for the presentation of an existing case,' on the one hand, and attempting to 'furnish evidence on which a prosecution could be based,' on the other hand, with only the former entitling a prosecutor to absolute immunity.") (quoting *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998)). Accordingly, the complaint should be dismissed as against DA McNamara based on his absolute prosecutorial immunity.

**V. <u>Defendant Utica Police Department</u>**

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't,* No. 5:18-CV-1471(GTS/DEP), 2019 WL 981850, at *1 (N.D.N.Y. Jan. 7, 2019), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008)); *see also Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357 (GLS/ATB), 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014). Accordingly, the complaint as against defendant Utica Police Department must be dismissed for failure to state a claim upon which relief may be granted.

Even if the court were to construe plaintiff's claims against the Utica Police Department as against the City of Utica, dismissal would still be warranted. A municipality may only be named as a defendant in certain circumstances. Pursuant to the standard for establishing municipal liability laid out in *Monell*, in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.").

***6** A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). Indeed, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

"[A] prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

In this case, plaintiff has (1) not identified any of the Utica police officers who allegedly violated his constitutional rights as defendants in this action, and (2) has offered no evidence that any such officer was acting pursuant to a policy or custom of the City when they detained and/or arrested plaintiff, or throughout the course of plaintiff's criminal proceeding. Accordingly, the City cannot be held liable for plaintiff's allegations of false arrest/imprisonment, malicious prosecution or unspecified due process violations, as stated in the complaint.

**VI. <u>Eighth Amendment Cruel and Unusual Punishment</u>**

Plaintiff has alleged an Eighth Amendment claim of cruel and unusual punishment. (Compl. at 7-8). Plaintiff does not specify against whom he alleges this violation of his


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

constitutional rights. (*Id.*). In any event, these protections of the Eighth Amendment "only apply to a person who has been criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the investigation and arrest of suspects prior to conviction and sentencing." *Spicer v. Burden*, 564 F. Supp. 3d 22, 31 (D. Conn. 2021) (citing *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986)); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Accordingly, any claim purportedly brought by plaintiff under the Eighth Amendment for cruel and unusual punishment must be dismissed.

### VII. Opportunity to Amend

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the court is recommending dismissal with prejudice as to defendant Utica Police Department, because the department may not be sued under § 1983. The court is further recommending dismissal with prejudice as to defendants Judge Dwyer, the Oneida County Courts and Officials, and DA McNamara, based on their absolute immunity from suit.

***7** Notwithstanding my recommendation that each of the named defendants be dismissed with prejudice, the court cannot say at this early stage of the litigation that plaintiff would be unable to amend his complaint to state a viable claim. Thus, the court recommends providing plaintiff the opportunity to amend his complaint for the limited purpose of asserting those claims alleging constitutional violations surrounding his detention, arrest, and subsequent criminal prosecution as set forth in his complaint, against the appropriate defendants. Plaintiff is reminded that if he intends to name the City of Utica as a defendant, he must plead, and ultimately prove, that a deprivation of his constitutional rights was caused by a custom, policy, or usage of the municipality. Likewise, plaintiff must specifically identify any individual law enforcement officer he is alleging violated his constitutional rights. If plaintiff chooses to amend his complaint, he must also specifically set forth the personal involvement of each named defendant relative to the conduct alleged to have violated his constitutional rights.

If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all of his claims in the new pleading and may not incorporate by reference any part of his original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [1] and it is

**RECOMMENDED**, that this action be **DISMISSED WITH PREJUDICE** as against named defendants **UTICA POLICE DEPARTMENT, JUDGE MICHAEL L. DWYER, ONEIDA COUNTY COURTS a/k/a/ ONEIDA COUNTY COURTS AND OFFICIALS, and DISTRICT ATTORNEY SCOTT McNAMARA**, and it is

**RECOMMENDED**, that plaintiff's complaint otherwise be **DISMISSED WITHOUT PREJUDICE,** and that, if the District Court adopts this recommendation, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERSEDE THE ORIGINAL**, and that plaintiff must include all remaining facts and causes of action in the amended complaint. No facts or claims from the original complaint may be incorporated by reference, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff does not elect to amend his complaint within the imposed deadline, the case be dismissed in its entirety, with prejudice, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review of the amended complaint and any orders relating to service on the defendants, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4935993

## Footnotes

1 Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4931609
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brandon T. MCNAIR, Plaintiff,
v.
UTICA POLICE DEPARTMENT et al., Defendants.

6:23-CV-699
|
Signed August 1, 2023

**Attorneys and Law Firms**

BRANDON T. MCNAIR, Plaintiff, Pro Se, 421 Margaret Street, Herkimer, NY 13350.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

***1** On June 12, 2023, *pro se* plaintiff Brandon T. McNair ("plaintiff") filed this 42 U.S.C. § 1983 action alleging that various defendants violated his civil rights. Dkt. No. 1. Along with his complaint, plaintiff also sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On June 26, 2023, U.S. Magistrate Judge Andrew T. Baxter granted plaintiff's IFP application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with partial leave to amend. Dkt. No. 4. As Judge Baxter explained, plaintiff's claims against defendants Utica Police Department, Judge Michael L. Dwyer, Oneida County Courts, and District Attorney Scott McNamara must be dismissed with prejudice because those defendants were shielded from plaintiff's claims by various immunity doctrines. *Id.* However, Judge Baxter concluded that plaintiff might still be able to assert a viable claim, or perhaps claims, for "alleged constitutional violations surrounding his detention, arrest, and subsequent criminal prosecution as set forth in his complaint, against the appropriate defendants." *Id.*

Plaintiff has not filed objections. The time period in which to do so has expired. *See* Dkt. No. 4. Upon review for clear error, the R&R is accepted and will be adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with prejudice against defendants Utica Police Department, Judge Michael L. Dwyer, Oneida County Courts a/k/a Oneida County Courts and Officials, and District Attorney Scott McNamara;

3. Plaintiff's complaint is otherwise DISMISSED without prejudice;

4. Plaintiff shall have forty-five days in which to file an amended complaint that conforms with the instructions set forth in Judge Baxter's June 26, 2023 Report & Recommendation;

5. If plaintiff files an amended complaint within this forty-five-day period, the matter shall be REFERRED to Judge Baxter for further review and any other action as appropriate; and

6. If plaintiff does not file an amended complaint within this forty-five-day period, the Clerk of the Court is directed to close this action without further Order of this Court.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4931609

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 1146942
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Leon G. TSINBERG, Plaintiff,
v.
CITY OF NEW YORK, Defendant.

20 Civ. 749 (PAE)
|
Signed 03/25/2021

**Attorneys and Law Firms**

Leon G. Tsinberg, Bronx, NY, Pro Se.

Pamela Ann Koplik, Mark W. Muschenheim, NYC Law Department, Office of the Corporation Counsel, New York, NY, for Defendant.

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

***1** Plaintiff Leon G. Tsinberg, a "non-admitted attorney" proceeding *pro se*, sues the City of New York (the "City") under 42 U.S.C. § 1983, alleging constitutional violations arising from the ticketing and towing of his 2009 Nissan Altima (the "Vehicle").

In 2018, while Tsinberg was temporarily living out of state, the Vehicle accumulated several parking tickets, mostly for displaying an expired registration. After Tsinberg failed to respond to those tickets, the City entered default judgments on them. Tsinberg later moved to reopen those judgments, but did not succeed. Then, in January 2019, the City immobilized and towed the Vehicle, which remains in storage accruing storage fees. Tsinberg alleges that these events violated, *inter alia*, his due process rights under the Fourteenth Amendment, his right to be free from excessive fines under the Eighth Amendment, his right to be free from unreasonable seizures under the Fourth Amendment, and his right against double jeopardy under the Fifth Amendment. The City has moved to dismiss all Tsinberg's claims.

Before the Court is the report and recommendation of the Honorable Sarah L. Cave, United States Magistrate Judge, recommending that the City's motion to dismiss be granted. *See* Dkt. 46 ("Report"). For the following reasons, the Court adopts that recommendation in full.

## I. Background

### A. Factual Background [1]

The Court adopts the Report's comprehensive account of the facts and procedural history, to which no party objects. The following summary captures the limited facts necessary for an assessment of the issues presented.

In New York City, the Parking Violations Bureau ("PVB") [2] issues and adjudicates summonses for violations of parking and traffic laws. *See* N.Y. Veh. & Traf. Law ("VTL") § 237(1)–(2), (9); N.Y.C. Admin. Code § 19-201 *et seq.* A person accused of a parking violation is first given a summons, *i.e.*, a parking ticket, containing information about the charged offense and how to contest or pay it. *See* VTL § 238(1); N.Y.C. Admin. Code § 19-204(a). State and City law require that, if the operator of the vehicle is not present at the time of service, notice of the violation must be affixed to the vehicle "in a conspicuous place." VTL § 238(2); N.Y.C. Admin. Code § 19-204(b). In that case, such notice "shall have the same force and effect and shall be subject to the same penalties for disregard thereof as" personal service on the violator. VTL § 238(2); N.Y.C. Admin. Code § 19-204(b).

***2** Once a parking summons issues, the recipient may plead guilty and pay the fine, or plead not guilty and receive a hearing date before an administrative law judge ("ALJ"). N.Y.C. Admin. Code §§ 19-202, 19-204, 19-206. A person may so plead by mail, by phone, in person at one of the Department of Finance's "Business Centers," or online, either through the City's website or a "Pay or Dispute" application. *See Schaer v. City of New York*, No. 09 Civ. 7441 (CM), 2011 WL 1239836, at *7 (S.D.N.Y. Mar. 25, 2011); Report at 3–4. If a party fails to plead or appear, the City may obtain a default judgment sustaining the charge in the summons, fixing the fine, and assessing fees and penalties. *See* N.Y.C. Rules & Regs. tit. 19 §§ 39-05, 39-07, 39-10(d). Once a default judgment is entered, a party may reopen it "only upon written application showing excusable neglect and a substantial defense to the charge." *Id.* § 39-10(i). After a party is found guilty of a parking violation, she may appeal to the PVB Appeals Board. *See* VTL § 242; N.Y.C. Rules & Regs. tit. 19 § 39-12(a), (b)(2). Finally, a party may challenge an adverse decision by the Appeals Board in New York State Supreme Court, by petitioning under Article 78 of the N.Y.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

C.P.L.R. ("CPLR"). *See* VTL § 243; N.Y.C. Admin. Code § 19-209.

If the owner of a vehicle owes more than $350 in judgments, the City may tow and impound her vehicle to satisfy those outstanding judgments. *See* N.Y.C. Admin. Code § 19-212; N.Y.C. Rules & Regs. tit. 34 § 4-08(a)(9). In that case, the owner may be held liable for towing and storage fees associated with the impoundment. *See* CPLR § 8013(c);[3] N.Y.C. Rules & Regs. tit. 34 § 4-08(a)(9)(iii)–(vii) (authorizing, among other things, $185 removal fee and $20-per-day storage fee).

Tsinberg spent most of 2018 temporarily living and working in Pennsylvania, where he ran a business out of the Philadelphia International Airport. FAC ¶ 1. During that time, he left the Vehicle parked in the Riverdale neighborhood of the Bronx, where it amassed 11 tickets, five of which are relevant here. *Id.* ¶¶ 1–2; Dkt. 22-3; Dkt. 26 ("Koplik Decl."), Ex. A.[4] The first of those five tickets was for displaying an expired inspection sticker; the other four were for displaying an expired registration sticker. *See* Dkt. 22-3; Koplik Decl., Exs. D–H. Each was issued on a different day between April and October 2018. After Tsinberg failed to respond to them, the City entered a default judgment on each about three months after issuance. *See* Koplik Decl., Exs. D–H; Report at 6–7. Each ticket was originally $65, or $325 total, but, after penalties associated with Tsinberg's failure to plead to or contest the tickets accrued, the total amount owed on the five tickets rose to over $600. FAC ¶ 34; Report at 6–7.

In January 2019, Tsinberg discovered the tickets and the default judgments against him. FAC ¶ 3. He then sought to vacate three of the default judgments by filing disputes through the City's "Pay or Dispute" application and submitting an image of his current, unexpired registration. *See* FAC ¶ 11; Koplik Decl., Exs. D–F. Each application was denied by an ALJ because his application did not show a legally sufficient reason for his failure to respond to the summons, and his proof of current registration did not refute that his car had displayed an expired registration when each summons was issued. *See* Koplik Decl., Exs. D–F.

On January 29, 2019, the City placed an immobilizing "boot" on the Vehicle. FAC ¶ 14. The City affixed a notice to the Vehicle, which provided a telephone number and five physical addresses at which Tsinberg could pay the outstanding judgments. Dkt. 22-4 ("Booting Notice"). The City also affixed an execution to the Vehicle, which stated that the state of New York, or one of its subdivisions, was the judgment creditor, "and/or the debt enforced is for child support, spousal support, maintenance or alimony." FAC ¶ 7; Dkt. 22-2 ("Execution"). The same day, Tsinberg filed an order to show cause ("OTSC") in New York State Supreme Court, seeking to commence an Article 78 proceeding and to obtain a temporary restraining order ("TRO") to prevent the towing of his Vehicle. FAC ¶¶ 5, 8; Dkt. 22-9. He tried to serve the City with the OTSC at two the addresses provided on the Booting Notice, but neither office would accept service. FAC ¶ 10.

***3** On January 30, 2019, the City towed the Vehicle. *Id.* ¶ 12. On February 15, 2019, the City placed an "indefinite sales hold" on the Vehicle—meaning that the Vehicle would not be auctioned to satisfy Tsinberg's unpaid judgments—given the pending Article 78 petition. *See id.* ¶¶ 22, 36; Koplik Decl., Ex. R. The Vehicle remains in City storage and has accrued thousands of dollars in storage fees. Reply at 7 n.5 (as of July 28, 2020, total outstanding judgments were $10,397.72). On June 25, 2019, the New York State Supreme Court dismissed Tsinberg's Article 78 petition because he had failed to serve or file any complaint or petition in the matter and to exhaust administrative appeals. Koplik Decl., Ex. Q.

### B. Procedural History

On January 28, 2020, Tsinberg filed a Complaint. Dkt. 2. On May 7, 2020, the City moved to dismiss. Dkts. 15–17. On June 18, 2020, Tsinberg filed the FAC. On August 3, 2020, the City moved to dismiss the FAC, Dkt. 25, and filed a memorandum of law in support, City Mem., and the declaration of Pamela A. Koplik, Esq., *see* Koplik Decl. On August 4, 2020, the Court referred that motion to Judge Cave for a report and recommendation. Dkt. 29. On August 18, 2020, Tsinberg opposed the City's motion. Dkt. 31 ("Pl. Opp'n"). On September 8, 2020, the City replied. *See* Reply.

While the motion to dismiss was pending, Tsinberg sought "preliminary discovery" from the City; the City moved to stay discovery pending a ruling on its motion to dismiss. *See* Dkt. 43 at 1. On November 19, 2020, Judge Cave granted the City's motion to stay, with an exception for the exchange of five narrow categories of information, largely relating to the circumstances surrounding the seizure and storage of the Vehicle. *Id.* at 2–3.

On January 22, 2021, Judge Cave issued the Report, which recommends the dismissal of the FAC with prejudice and without leave to amend. *See* Report at 1, 35. On February

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

15, 2021, Tsinberg filed objections to the Report. Dkt. 51 ("Objections"). On March 15, 2021, the City responded. Dkt. 54 ("Response").

**II. Legal Standard**

**A. Report and Recommendation**

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v UPS*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report and recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012).

**B. Motion to Dismiss Pursuant to Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Although the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

***4** Where, as here, the plaintiff is *pro se*, his complaint must be construed "liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests." *J.S. v. T'Kach*, 714 F.3d 99, 103 (2d Cir. 2013) (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009). Consistent with that approach, factual allegations made in a *pro se* plaintiff's opposition papers, or the attachments thereto, may be considered "as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint." *George*, 2012 WL 2512964, at *6 n.7.

However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Maisonet*, 640 F. Supp. 2d at 348 (citation omitted). Thus, even a *pro se* plaintiff "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). The Court need not accept allegations that are "contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005).

**III. Discussion**

The Report recommends dismissal of Tsinberg's entire case for failure to state a claim. In many respects, Tsinberg's objections do not engage with any specific aspects of the thoughtful and well-reasoned Report, but reprise, through 35 "claims" spanning nearly 50 pages, general assertions about the sufficiency of the FAC's allegations and principles of constitutional law. Thus, as to much of the Report, review for clear error would be appropriate. *See Dickerson*, 2013 WL 3199094, at *1. Nevertheless, for the avoidance of doubt, in the interest of thoroughness, and given Tsinberg's *pro se* status, the Court will review the entire Report *de novo.*

The Court addresses Tsinberg's claims in the following order: (1) Fourteenth Amendment Due Process Clause claims; (2) Fifth Amendment Double Jeopardy Clause claim; (3) Eighth Amendment Excessive Fines Clause claim; (4) Fourth Amendment claim; (5) municipal liability claim; (6) Fair Debt Collection Practices Act claim; and (6) state-law claims. Finally, the Court addresses Tsinberg's request for leave to amend the FAC.

### A. Due Process Clause

#### 1. Procedural Due Process

Tsinberg claims that the City's ticketing and towing of his car violated his rights to procedural due process because he received insufficient notice of the tickets, because the dispute mechanism provided by the "Pay or Dispute" application was inadequate, and because his Article 78 proceeding failed to provide adequate post-deprivation remedies. *See* FAC ¶¶ 48–61; Pl. Opp'n ¶¶ 1–11, 18–20.

The Court agrees with the Report that Tsinberg has failed to allege a violation of his rights to procedural due process. Before depriving a person of a liberty or property interest, the state, consistent with due process of law, must use procedures that balance the interests involved in the deprivation. "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.' " *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)). The interests to be balanced are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

***5** "Courts in this Circuit have found that, as a general matter, the PVB/Article 78 review process for challenging parking summonses meets the requirements of procedural due process." *Nestle Waters N. Am., Inc. v. City of New York*, No. 15 Civ. 5189 (ALC), 2016 WL 3080722, at *8 (S.D.N.Y. May 25, 2016) (collecting cases), *aff'd*, 689 F. App'x 87 (2d Cir. 2017) (summary order); *see Schaer*, 2011 WL 1239836, at *9 ("The City's administrative parking violations system has been held to be constitutional.") (collecting cases); *Rackley v. City of New York*, 186 F. Supp. 2d 466, 480 (S.D.N.Y. 2002) (The City "provide[s] parking violators ... with more than sufficient process to satisfy the Constitution."). To plausibly allege a procedural due process violation, therefore, Tsinberg must allege some departure from that constitutionally "more than sufficient" process.

Tsinberg has failed to do so. First, he alleges that the City's service of parking summonses by affixing them to his car and mailing them to him was insufficient. That is because he alleges that he failed to receive *actual* notice of the tickets and, because he lived in Philadelphia at the time, the City should have either called or emailed him to give him such notice before the judgments against him were entered. *See* FAC ¶¶ 48–49; Objections at 17, 20–21. But the method of service the City employed here is prescribed by the statutes above, and courts have repeatedly held it to be constitutional. *See* VTL § 238(2); *e.g.*, *Nestle Waters*, 2016 WL 3080722, at *8. Nor was the City obliged to anticipate that Tsinberg might have been out of state for several months, and to depart from its statutorily prescribed method of service to accommodate that absence. Further, as the Report notes, Tsinberg did receive actual notice of the default judgments against him, as evidenced by his challenges thereto, and had both the chance to contest them before the City towed and impounded his Vehicle several weeks later, and to pay them while his Vehicle continued to accumulate storage costs. *See* Report at 19.

Second, Tsinberg alleges that the procedures through which he tried to vacate the default judgments against him were deficient because the "Pay or Dispute" application is flawed in unspecified ways. *See* FAC ¶¶ 48–51; Pl. Opp'n ¶ 10. To the extent that Tsinberg alleges that the City obtained judgments against him through "adjudication via app," that is wrong. As the Report notes, the default judgments were entered in the usual course, and Tsinberg merely tried to vacate them through the "Pay or Dispute" application. *See* Report at 18–19. As to the latter process, Tsinberg was never required to use that method of contesting the judgments—he remained free at all times to file his disputes by mail or in person. *See* City Reply at 3 n.1. His decision to do so, absent any allegation that other such options were unavailable, cannot support a plausible claim for any deprivation of procedural due process.

Third, Tsinberg alleges that, while Article 78 proceedings may, in some cases, provide adequate post-deprivation protections against arbitrary government action, here that was not so because the New York Supreme Court's dismissal of his Article 78 proceeding for failure to serve, failure to file a petition, and failure to exhaust administrative remedies was "merely on a Temporary Restraining Order," and not a "valid, final judgment on the merits." FAC ¶ 55. He also argues that, because the Booting Notice did not provide him with the proper address for service of an Article 78 petition on the City, he was denied procedural due process.

Pl. Opp'n ¶¶ 7–9; Objections at 6–7, 9–11, 15–17. As to the first point, Tsinberg's decision to seek a TRO rather than commence an Article 78 proceeding, as well as his failure to serve or file any attending petition or exhaust administrative remedies, resulted from his own decisions, not any procedural impediments erected by the City. *See* Koplik Decl., Ex. Q. Those decisions do not affect the availability of Article 78 proceedings as a sound, post-deprivation guard against erroneous deprivations. "The fact that [a plaintiff] failed properly to pursue the state court action, and that it is now too late to do so, does not affect [the] due process analysis. Where a state law remedy gives a party a meaningful opportunity to challenge the state's action, he is not deprived of due process simply because he failed to avail himself of the opportunity." *Nestle Waters*, 2016 WL 3080722, at *10 (quoting *Rivera-Powell v. N.Y.C. Bd. of Elections*, 740 F.3d 458, 467 n.9 (2d Cir. 2006)); *see Schaer*, 2011 WL 1239836, at *9 ("[T]he Second Circuit has 'held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy[.]' " (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 985 F.2d 90, 93 (2d Cir. 1996))). [5] As to the second, Tsinberg does not provide any authority for the notion that the City deprived him of due process by failing to provide, on the Booting Notice, the proper address for service of a TRO, rather than the proper address at which to pay his tickets.

***6** The Court thus agrees with the Report that the FAC fails to plausibly allege any procedural due process violation. [6]

### 2. Substantive Due Process

Although the FAC did not do so expressly, the Report also construed it to assert a substantive due process claim, but found such claim to be deficient. The Court agrees with that assessment. To violate Tsinberg's substantive due process rights, the City's actions "must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.' " *Schaer*, 2011 WL 1239836, at *6 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). "Only conduct that 'shocks the conscience' qualif[ies] as even potentially violative of plaintiffs' substantive due process rights." *Id.* (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)). Upon *de novo* review, the Court agrees with, and adopts in full, the Report's conclusion that the City's ticketing and towing of Tsinberg's car—all under established and oft-approved state and local law—does not approach this threshold. *See* Report at 23–24. [7] Tsinberg's claim for violation of his substantive due process rights is also dismissed.

### B. Double Jeopardy

Tsinberg next claims that the issuance of several tickets for the same alleged failure to display an unexpired registration sticker subjected him to double jeopardy, in violation of the Fifth Amendment. *See* FAC ¶ 45. The Report recommends dismissing this claim because the Double Jeopardy Clause applies only to criminal proceedings, and Tsinberg has failed to adequately allege that the parking sanctions imposed on him were "so punitive in form and effect as to render them criminal despite [the legislature's] intent to the contrary." Report at 25–26 (quoting *Doe v. Pataki*, 120 F.3d 1263, 1274 (2d Cir. 1997)).

***7** Again, the Court agrees with that assessment. The Double Jeopardy Clause protects an individual's right not to be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2. The Supreme Court has held that the "Clause protects only against the imposition of multiple *criminal* punishments for the same offense," and does not apply to civil penalties. *Hudson v. United States*, 522 U.S. 93, 99 (1997). To decide whether a sanction is criminal or criminal, courts apply a two-part test. First, courts consider whether the legislative intent behind the law was punitive: If the intent was " 'not to punish, but to accomplish some other legitimate governmental purpose,' then it has been considered 'nonpenal.' " *Doe*, 120 F.3d at 1273. Second, even where a law was not *designed* to be punitive, courts then must determine whether it is "so punitive either in purpose or effect" that the sanction at issue is "transform[ed] into a criminal penalty." *United States v. Ward*, 448 U.S. 242, 248–49 (1980). The Supreme Court "has not spelled out the precise nature of the second-stage inquiry," *Doe*, 120 F.3d at 1275, but has identified several non-exclusive and non-dispositive factors that may guide it, *see Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963) (identifying, *inter alia*, whether the sanction imposes an affirmative disability or restraint, has historically been considered punishment, and depends on a finding of scienter). At this second stage of the inquiry, the burden is on the party challenging a law to "show by 'the clearest proof' that the sanctions imposed 'are *so punitive in form and effect* as to render them criminal despite [the legislature's] intent to the contrary.' " *Doe*, 120 F.3d at 1274 (quoting *United States v. Ursery*, 518 U.S. 267, 290 (1996)).

Here, Tsinberg addresses only the second inquiry, arguing that the collective amount of fines and fees, including storage fees, imposed on him provide "the clearest proof" that the parking sanctions at issue are in fact criminal. *See* Objections at 32–35. The Court disagrees. As the Report cogently explains, the City's parking procedures, including seeking recoupment of storage costs occasioned by the impoundment of delinquent vehicles, serve legitimate, important non-punitive interests. *See* Report at 24, 26 (collecting cases). And Tsinberg does not explain how the accumulation of fines and storage costs, resulting from his own failure to pay the original penalties, can convert otherwise civil sanctions into criminal ones. Indeed, as the Report notes, such a result would be surprising given the substantial New York state authority holding that parking and traffic sanctions are civil, not criminal. *See Dubin v. County of Nassau*, 277 F. Supp. 3d 366, 400 (E.D.N.Y. 2017) (noting that "such a claim would not be plausible given the weight of New York legal authority holding that penalties for traffic infractions are civil and not criminal" and collecting cases). The imposition of parking tickets, and resulting penalties for non-payment, thus is not a criminal punishment to which the Double Jeopardy Clause applies. The Court adopts the Report's recommendation and dismisses Tsinberg's double jeopardy claim.

**C. Excessive Fines**

Next, Tsinberg alleges that the magnitude of the civil penalties that have accrued on the parking tickets at issue are impermissible under the Eighth Amendment's prohibition on excessive fines. In support, he argues that, while the $65 fines originally imposed may not be excessive, the accumulation of "fines on fines," including tow, boot, and storage fees, is unconstitutional, and tantamount to "criminal usury." *See* FAC ¶¶ 32–44, 69; Pl. Opp'n ¶¶ 21–27; Objections at 36–40. The Report recommends dismissal of this claim because, even if the Excessive Fines Clause applies here, the fines are not disproportionately excessive. *See* Report at 26–30. The Court agrees with the Report's assessment.

The Second Circuit has established a "two-step inquiry for determining whether a financial penalty is excessive under the Eighth Amendment." *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016). First, a court must "determine whether the Excessive Fines Clause applies at all," *i.e.*, whether the forfeiture at issue "may be characterized, at least in part, as 'punitive.' " *Id.* at 109. Second, a court must "determine whether the challenged forfeiture is unconstitutionally excessive." *Id.* A fine is constitutionally excessive "if it is grossly disproportional to the gravity of a defendant's offense." *Id.* (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).

***8** Here, the parties and the Report focus only on the second question, assuming that the Excessive Fines Clause applies in the first instance. The Court therefore assumes without deciding that the Clause applies to the routine application of the City's parking and traffic laws in cases like Tsinberg's.[8] As to the second factor, the Second Circuit has set forth a four-factor test governing the inquiry:

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*Viloski*, 814 F.3d at 109 (quoting *United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015)). Courts may also consider, along with those four factors, "whether the forfeiture would deprive the defendant of his livelihood." *Id.* at 111. In undertaking this analysis, the Supreme Court has admonished that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Bajakajian*, 524 U.S. at 336; *see id.* (courts "should grant substantial deference" to the legislature (citation omitted)).

The Court agrees that Tsinberg has failed to plausibly allege that the fines at issue are "grossly disproportional" to Tsinberg's offenses. Tsinberg does not argue that the $65 parking fines were excessive. *See, e.g.*, FAC ¶ 36; Pl. Opp'n ¶ 11.[9] Instead, he contends that the fines he accrued for failing to address the five $65 tickets, and the resulting fees associated with booting, towing, and storing his Vehicle collectively became disproportionate. *See, e.g.*, Objections at 38–40. Whereas Tsinberg was ticketed $65 per original ticket, or $325 total, those penalties increased to about $640, or another $63 per ticket, after he failed to respond to or pay those tickets. *See* FAC ¶ 34; Koplik Decl., Exs. D–H; Dkt. 22-3. As to the first factor, Tsinberg's offense is the accumulation and failure to resolve several duly issued parking tickets, for which, as several ALJs held, he did not

provide any legitimate excuse. *See* Koplik Decl., Exs. D–F. Beyond the five tickets directly at issue here—which Tsinberg still has not paid—he also accrued at least six others in a similar period, for a variety of offenses. *See* Dkt. 22-3. Thus, while negligent or reckless parking violations themselves may not entail a great degree of moral culpability, *see George*, 779 F.3d at 123, Tsinberg's sustained refusal to lawfully address them, well after he undisputedly received notice of them, weighs in the City's favor. As a result, Tsinberg is squarely a member of the "class of persons for whom" such enhanced penalties were principally designed. *Viloski*, 814 F.3d at 109. Without the prospect of escalating fines, violators like Tsinberg would have little reason ever to pay their tickets to the City. The third factor, as to whether the maximum fine was imposed, does not fit well into the parking-ticket context, where there appears to be little discretion over the degree of any given penalty. *Cf. Viloski*, 814 F.3d at 109 (discussing imposition of sentence and fine within the context of the criminal Sentencing Guidelines and statutory maximum penalties). Thus, the Court gives it little weight in the analysis. Last, although when Tsinberg's experience is viewed in isolation, his non-payment of five $65 tickets may not have meaningfully harmed the City of New York, the City must process an "overwhelming volume of alleged parking violations." *C.A.U.T.I.O.N., Ltd. v. City of New York*, 898 F. Supp. 1065, 1067 (S.D.N.Y. 1995). Without the ability to enforce timely compliance by scofflaws who might otherwise be disinclined to pay up, it would likely suffer substantial financial harms. The City also has a separate, if less tangible, interest in promoting compliance with its laws, which is undermined even by small-scale disregard like that here.

***9** Considering the above factors, Tsinberg has not plausibly alleged anything close to a gross disproportion between his offense and the penalties, totaling $315, for his failure to address his many parking tickets. That conclusion accords with the assessment of various other courts to have considered the issue. *See, e.g.*, *Shibeshi v. City of New York*, No. 11 Civ. 4449 (LAP), 2011 WL 13176091, at *2 (S.D.N.Y. Sept. 21, 2011) ("[Plaintiff's] fines totaling $515.16 for four tickets, plus additional fees, are not disproportional."), *aff'd*, 475 F. App'x 807 (2d Cir. 2012) (summary order); *Wemhoff v. City of Baltimore*, 591 F. Supp. 2d 804, 808–09 (D. Md. 2008); *Popescu v. City of San Diego*, No. 06 Civ. 1577 (LAB), 2008 WL 220281, at *4 (S.D. Cal. Jan. 25, 2008) (penalty's increase from $47 to $104 upon nonpayment not excessive). [10]

The same is true of Tsinberg's claim that the City's booting, towing, and impounding of his car, and that the resulting accrual of fees, were excessive. Courts have approved the towing and auctioning of vehicles to satisfy municipal judgments, as state law specifically authorizes. *See, e.g.*, *Berger v. Phila. Parking Auth.*, 413 F. Supp. 3d 412, 420 (E.D. Pa. 2019) (denying Eighth Amendment Excessive Fines claim under *Timbs* for towing and impoundment of vehicle for failure to pay parking tickets); *see also Rackley*, 186 F. Supp. 2d at 469–85 (same under Fourth Amendment and Due Process Clause). Although the value of the car was, at the time of its towing, substantially greater than the amount Tsinberg owed, he remained free at all times to recover the Vehicle by paying the City what he owes it. And even if the City auctions his car to satisfy the judgments at issue, Tsinberg would then have a right to receive any sale proceeds above the outstanding judgments and fees at the time of sale. *See* CPLR § 5234(a). Finally, as to the booting, towing, and storage fees associated with the Vehicle—including the mandatory $20 daily storage fee that has been amassing since January 2019 as a result of Tsinberg's refusal to pay his debts to the City, *see* N.Y.C. Rules & Regs. tit. 34 § 4-08(a)(9)(vii)—Tsinberg fails to explain, except in conclusory terms, why those essentially compensatory fees are unconstitutional. *See, e.g.*, *Potter v. City of Lacey*, No. 20 Civ. 05925 (RJB), 2021 WL 915138, at *1 (W.D. Wash. Mar. 10, 2021) (impoundment fees not excessive because "they can reflect the costs associated with towing and storage"); *see* Objections at 38–40. Accordingly, the Court adopts in full the Report's recommendation that Tsinberg's Eighth Amendment claim, too, be dismissed for failure to state a claim.

### D. Fourth Amendment

Tsinberg also asserts a Fourth Amendment claim related to the towing of the Vehicle, arguing that such towing constituted an unreasonable seizure. *See* FAC ¶¶ 62–67. Specifically, he claims that the City booted and towed his Vehicle "through an automated system ... without an independent review of the underlying facts and circumstances ... by a judge." *Id.* ¶ 65. He also asserts that the inclusion of language regarding child support, spousal support, or alimony on the Execution makes the seizure even more unreasonable. *See id.*; Execution. The Report recommends dismissal of this claim, which the Court adopts.

***10** The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on states

and, relevant here, municipalities such as New York City. *See City of Ontario v. Quon*, 560 U.S. 746, 750 (2010). It "applies in the civil context as well" as the criminal. *See, e.g.*, *Soldal v. Cook County*, 506 U.S. 56, 57 (1992) (collecting cases).

A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) (quoting *United States v. Jacobson*, 466 U.S. 109, 113 (1984)). The reasonableness of a seizure is the "ultimate standard under the Fourth Amendment." *Soldal*, 506 U.S. at 61 (citation omitted). The permissibility of any governmental seizure is thus "judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979).

Tsinberg has failed to plausibly allege that any seizure of his Vehicle was unreasonable. It is undisputed that the City seized Tsinberg's Vehicle based on valid judgments entered against him pursuant to state and local law, and that the seizure was authorized by statute given those outstanding judgments. *See* N.Y.C. Admin. Code § 19-212 (allowing towing of vehicle for which outstanding judgments exceed $350); *see also* VTL § 237(5) (empowering PVB to "enter judgments and enforce them, without court proceedings, in the same manner as the enforcement of money judgments in civil actions in any court of competent jurisdiction or any other place provided for the entry of civil judgment within the state of New York"); FAC ¶ 34 (alleging that $640.59 in fines "caused NYC Admin. Code § 19-212 to trigger this seizure of the property"). Courts have held that the towing and impoundment of vehicles in similar circumstances is reasonable under the Fourth Amendment. *See, e.g.*, *Shibeshi*, 2011 WL 13176091, at *2 ("The City's warrantless seizure of a person's vehicle from a public street due to that person's failure to pay parking ticket fines has been held not to violate the Fourth Amendment in that it is a reasonable seizure, does not implicate core privacy concerns requiring a warrant and, of itself, demonstrates probable cause."); *Yu Juan Sheng v. City of New York*, No. 05 Civ. 1118 (RRM) (VVP), 2009 WL 6871132, at *8 (E.D.N.Y. June 26, 2009) (approving towing and impoundment resulting from default judgments on parking tickets), *report and recommendation adopted*, 2010 WL 3744428 (E.D.N.Y. Sept. 20, 2010); *Rackley*, 186 F. Supp. 2d at 478–79 (same even where City officials erroneously calculated amounts owed to City on multiple dates). Tsinberg does not offer any countervailing authority, or explain why the underlying tickets arising from the same expired registration makes the ultimate seizure, which undisputedly complied with N.Y.C. Admin. Code § 19-212, unreasonable. *See* FAC ¶ 65. [11] The Court therefore also adopts the Report's recommendation on this point and dismisses Tsinberg's Fourth Amendment claim.

### E. *Monell* Liability

***11** Having dismissed each of Tsinberg's § 1983 claims, the Court holds, with the Report, that dismissal of Tsinberg's claim for municipal liability against the City is required as well. A plaintiff cannot establish municipal liability under § 1983 based on a theory of *respondeat superior*. Instead, to hold a municipality liable for its employees' unconstitutional actions, a plaintiff must establish a municipal policy or custom that directly caused the plaintiff to be subjected to a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); *see City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (the "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). Because *Monell* liability merely extends liability for an underlying constitutional violation to a municipality, without a predicate violation, the Court need not address whether the municipality itself can be liable for such violation. *See, e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *see also Salem v. City of New York*, 811 F. App'x 678, 683 (2d Cir. 2020) (summary order) (dismissal of *Monell* claim appropriate where plaintiff had "not plausibly pled any underlying constitutional violation that survives a motion to dismiss"). Here, with the Court's having held that Tsinberg failed to state a claim for any underlying constitutional violation under § 1983, there is no basis to extend any such liability to the City based on an alleged custom, policy, or widespread usage of the City. Tsinberg's *Monell* claim is therefore dismissed.

### F. Fair Debt Collection Practices Act

Tsinberg next asserts that the City's actions violated the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1962 *et seq.* He alleges that the Execution's reference to child support or alimony, as a potential ground for seizure of the Vehicle, was false and harassing under that statute. *See* FAC ¶¶ 62–63; Pl. Opp'n ¶¶ 28–29; Objections at 40. As the Report

correctly concluded, that claim fails for at least two reasons. First, the FDCPA does not apply to actions taken by municipal employees, and Tsinberg alleges only that the City of New York, through its employees, affixed the Execution notice to his Vehicle. *See* 15 U.S.C. § 1962a(6)(C) (excluding from definition of "debt collector" any "officer or employee of ... any state"), (8) (defining "state" to include "any political subdivision" thereof). Second, the FDCPA "does not extend to creditors seeking to collect on debts owed to themselves." *Muniz v. Bank of Am., N.A.*, No. 11 Civ. 8296 (PAE), 2012 WL 2878120, at *3 (S.D.N.Y. July 13, 2012) (collecting cases). Here, the City's Execution was issued and posted in connection with its attempts to collect debts Tsinberg owed to the City, not to any other person. The Court thus adopts the Report in full in dismissing Tsinberg's claim for a violation of the FDCPA.

**G. State-Law Claims**

Finally, Tsinberg brings claims under state law for conversion, trespass to chattels, and defamation. FAC ¶¶ 68–71. The Report recommends that the Court decline to exercise supplemental jurisdiction over these claims given the Court's dismissal of Tsinberg's federal causes of action. The Court agrees. "District courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine —judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (citation omitted); *Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010) ("[T]he district court may also decide whether to exercise supplemental jurisdiction over this claim; it may determine that this area of law would benefit from further development in the state courts and therefore dismiss the claim without prejudice to refiling in state court."); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Having dismissed all federal claims over which the Court had original jurisdiction before meaningful discovery has taken place, and far before trial, the Court dismisses Tsinberg's state-law claims, too, without prejudice to his pursuit of those claims in state court.

**H. Leave to Replead**

***12** Last, the Report recommends that Tsinberg not be granted leave to file another amended complaint, and that his claims instead be dismissed with prejudice given the substantive deficiencies in his allegations and his earlier opportunity to amend his complaint after the City moved to dismiss it. Report at 34–35. Tsinberg, in his Objections (but not in his opposition), sought leave to file another amended complaint, after further discovery, to remedy any deficiencies in the FAC. *See* Objections at 48. He does not, however, identify any specific facts that, if pled, could salvage any of his claims. *See id.*

*Pro se* complaints should generally be given leave to amend when there is "any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (citation omitted); *see Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013). But a district court has discretion to deny leave if a revised claim still "could not withstand a motion to dismiss." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). If the problems with a *pro se* plaintiff's claim are "substantive," rather than the result of an "inadequately or inartfully pleaded" complaint, an opportunity to replead would be "futile" and "should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Thus, "[i]n the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile." *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004); *see also, e.g.*, *Cuoco*, 222 F.3d at 112 (courts should generally grant a *pro se* plaintiff "leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated"); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order) ("Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim.").

The Court agrees with the recommendation in the Report and will dismiss Tsinberg's claims without leave to amend, and with prejudice. Tsinberg already had one opportunity to amend his complaint, and did so after reviewing the City's arguments, in its first motion to dismiss, explaining why his pleading failed to state a claim. *See, e.g.*, *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) (upholding dismissal of amended complaint with prejudice where, "following Defendant's first motion to dismiss for failure to state a claim," plaintiff had already amended its

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

complaint once and failed to "resolve its pleading deficiencies in its First Amended Complaint"); *Green v. Niles*, No. 11 Civ. 1349 (PAE), 2012 WL 987473, at *7 (S.D.N.Y. Mar. 23, 2012). Further, the Court agrees with the Report's assessment that the FAC's substantive deficiencies are such that a third attempt to state a viable claim would be futile. *See, e.g.*, *Binn v. Bernstein*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at *34 (S.D.N. Y July 13, 2020) (collecting cases denying plaintiffs a "third bite at the apple"), *aff'd*, 2020 WL 4547167 (2d Cir. Aug. 6, 2020).

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in full, grants the City's motion to dismiss, and dismisses Tsinberg's claims without leave to amend. Tsinberg's federal claims are dismissed with prejudice, but his state-law claims are dismissed without prejudice to his ability to pursue them in state court.

***13** The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1146942

## Footnotes

1 The Court mainly draws its account of the facts from the Amended Complaint and the documents attached to and discussed in it. Dkt. 22 ("FAC"); *see* *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). Given Tsinberg's *pro se* status, the Court also considers the allegations raised in Tsinberg's opposition to the motion to dismiss to the extent consistent with those in the FAC. *See, e.g.*, *George v. Pathways to Hous., Inc.*, No. 10 Civ. 9505 (ER), 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012). To resolve the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiffs. *See* *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

2 What was once called the PVB is now called the "Adjudications Division." *See* Dkt. 27 ("City Mem.") at 2. The Court, however, follows the parties and the Report in generally referring to the agency using its old name, the PVB.

3 In its opening brief, the City misidentified the statute authorizing the imposition of towing and storage fees as VTL § 1224. *See* Dkt. 33 ("Reply") at 7 n.5. It clarified in its reply brief that VTL § 1224 only applies to abandoned vehicles, and that CPLR § 8013(c) is the authorizing statute for the imposition of removal and storage fees in this case. *Id.*

4 Only the first five were subject to final judgments in January 2019, when Tsinberg's car was towed, although several would later become so, leading to $750 more in outstanding judgments. *See* Dkt. 22-3; Report at 7–8.

5 The Report construed Tsinberg's allegations about the adequacy of the Article 78 proceedings as a challenge to the result of that action, and so assessed this issue under the *Rooker-Feldman* doctrine. *See* Report at 19–20. But in the Court's view, Tsinberg's challenge to the procedural adequacy of the Article 78 proceeding, liberally construed, does not necessarily require review of the merits of that action. *See* *Hoblock v. Albany Cnty. Bd. Of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (*Rooker-Feldman* bars federal court review of merits of state-court judgments). Thus, while the Court agrees with the Report's ultimate conclusion, it departs from the

Report insofar as it based its recommendation on the application of *Rooker-Feldman.* To the extent Tsinberg does seek review of the merits of the state-court decision at issue, the Court fully agrees with the thoughtful assessment of this issue in the Report.

6 In his Objections, Tsinberg argues, for the first time, that *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) requires a different result. But parties may not raise new legal arguments for the first time in their objections to a report and recommendation. *See, e.g.*, *Gonzalez v. Garvin*, No. 99 Civ. 11062 (SAS), 2002 WL 655164, at *2 (S.D.N.Y. Apr. 22, 2002) (dismissing objection "because it offers a new legal argument that was not presented in his original petition, nor in the accompanying Memorandum of Law"); *see also Abu-Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906 (PKL), 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) (rejecting arguments advanced for first time in objections to report because permitting such claims would "undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments"). The Court thus rejects this objection. In any event, as the City notes, *Krimstock* appears inapposite. *See* Response at 3 & n.1.

7 In his Objections, Tsinberg expands on his claim of a substantive due process violation, suggesting that the state has no legitimate interest in enforcing registration requirements and that he was singled out for disfavored treatment when the City placed his car on an "indefinite sales hold" as a result of his Article 78 petition, leading to significant storage fees. Objections at 17–19, 25–32. Again, these new theories are not cognizable in the Court's review of a report and recommendation. *See, e.g.*, *Gonzalez*, 2002 WL 655164, at *2. Even if they were, they do not come close to showing a substantive due process violation. In fact, it appears that it was Tsinberg, not the City, who requested that the Vehicle be placed on a sales hold, which request led to the accumulating storage fees. FAC ¶ 54; *see also* Koplik Decl., Ex. R (sales hold listing "requester" as "Leon G. Tsinberg").

8 *See Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 198–99 (S.D.N.Y. 2019) ("fees and penalties" that "are multiples" of an unpaid tolls were plausibly alleged to be partially punitive); *Dubin*, 277 F. Supp. 3d at 400–02 (Excessive Fines Clause applied to "Drivers' Responsibility Fee" that imposed a mandatory $45 payment on ticketed motorists who received a final disposition other than "not guilty," and recognizing that "administrative and other civil penalties satisfy the [first factor], even if they bear no direct relationship to a criminal prosecution"); *see also Pimental v. City of Los Angeles*, 974 F.3d 917, 922 (9th Cir. 2020) (Excessive Fines Clause applies to "municipal fines," and specifically parking tickets and late penalties, under *Timbs v. Indiana*, 139 S. Ct. 682 (2019), which held that the Clause applies to the states). *But see id.* at 925–29 (Bennett, J., concurring) (disagreeing that Eighth Amendment Excessive Fines Clause "should routinely apply to parking meter violations," noting that the "potential for federal court litigation is endless" and risks "trivializ[ing] the Eighth Amendment, the Fourteenth Amendment, and the Civil Rights Acts"). Given the Supreme Court's recent holding that the Fourteenth Amendment incorporates the Excessive Fines Clause against state and municipal governments, *see Timbs*, 139 S. Ct. 682, courts in the coming years may be called on more often to assess its applicability to cases like this one, and the extent to which these protections police the bounds of municipal fines, fees, and other penalties. Without fuller presentation by the parties, the Court here has no occasion to opine on this threshold question.

9 Tsinberg, for the first time in his Objections, argues that the $65 exceeds a statutory cap of $50 for parking violations set by N.Y. Admin. Code § 19-203(b). *See* Objections at 37. As the City notes, the $65 amount results from a mandatory state surcharge required by VTL § 1809-a, which provides that "[t]he provisions of any other general or special law notwithstanding," any city with more than 100,000 persons, must levy "a mandatory surcharge in addition to any other sentence, fine or penalty otherwise permitted or required, in the amount of fifteen dollars." Response at 7. That provision states that such $15 surcharge "shall not be deemed a monetary penalty for the purposes of ... section 19-203 of the administrative code of the city of New York"—the provision that Tsinberg relies on for this point.

10 Although Tsinberg relies heavily on the Supreme Court's holding in *Timbs* in arguing to the contrary, that case merely held that the Excessive Fines Clause applies to the states. *See* 139 S. Ct. at 691 ("[R]egardless of whether application of the Excessive Fines Clause to civil *in rem* forfeitures is itself fundamental or deeply rooted, our conclusion that the Clause is incorporated remains unchanged"). It did not purport to alter the above analysis.

11 Tsinberg is also vague as to how the reference to child support or alimony on the Execution plays into the Fourth Amendment analysis. To the extent he argues that the language on the Execution falsely accuses him of owing child support or alimony, that characterization is wrong. A photograph of the Execution is attached to the FAC. It identifies outstanding child support or alimony as *among* the authorized bases for such an execution, but it does not state that each was the bases for executing on Tsinberg's car. It states: "The judgment creditor is the state of New York, or any of its agencies or municipal corporations *and/or* the debt enforced is for child support, spousal support, maintenance or alimony." Execution (emphasis added). The execution's recitation thus is consistent with the FAC's allegation that Tsinberg does not owe child support, alimony, or spousal support. FAC ¶ 7; *see* Report at 29 (noting that Execution merely recites legally available bases). Even construing the FAC liberally, it is not plausibly alleged that Tsinberg's vehicle was towed based on a misperception that he owed child support, spousal support, or alimony, as opposed to the substantial debts that Tsinberg admits he actually owed to the City for parking infractions.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 6685476
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kylie Ann TURCZYN, Deceased, by and through Barbara McGREGOR, as Administratrix of the Estate of Kylie Ann Turczyn, Plaintiff,
v.
CITY OF UTICA et al., Defendants.

No. 6:13–cv–1357 (GLS/ATB).
|
Signed Nov. 26, 2014.

**Attorneys and Law Firms**

Office of Frank Policelli, Frank Policelli, Esq., of Counsel, Utica, NY, for the Plaintiff.

City of Utica—Corporation Counsel, Mark C. Curley, Esq., Merima Smajic, Esq., Zachary C. Oren, Esq., of Counsel, Utica, NY, for the Defendants.

***MEMORANDUM–DECISION AND ORDER***

GARY L. SHARPE, Chief Judge.

## I. *Introduction*

***1** Plaintiff Kylie Ann Turczyn, deceased, by and through Barbara McGregor, as administratrix of the estate of Kylie Ann Turczyn, commenced this action against defendants City of Utica, City of Utica Police Dept., and Elizabeth Shanley alleging substantive due process claims pursuant to 42 U.S.C. § 1983 and separate state law causes of action. (Am.Compl., Dkt. No. 12.) Pending is defendants' motion to dismiss for failure to state a claim. (Dkt. No. 19.) For the reasons that follow, the motion is granted in part and denied in part.

## II. *Background*

### A. *Facts* [1]

Shanley, an Oneida County domestic violence investigator, was at all relevant times assigned by the Police Department to accomplish the goals of reducing "occurrence[s] of domestic violence by increasing reporting and by identifying and tracking repeat victims and/or offenders," and "increas[ing] victims' access to supportive services by encouraging [them] to report their abuse, thereby increasing arrest rates for domestic offenders." (Am.Compl.¶ 10.) On June 22, 2012, Thomas Anderson, Turczyn's former boyfriend and the father of her daughter, broke into Turczyn's home armed with a 9 mm rifle. (*Id.* ¶ 11) Anderson repeatedly shot Turczyn, taking her life in view of their four-year-old daughter, G.T. (*Id.*) Anderson then dispatched himself. (*Id.*)

In the twelve months preceding this horrific event, Turczyn made between five and ten complaints to Utica police officers, "including informing them of a specific threat by Anderson to kill her." (*Id.* ¶ 12.) Turczyn specifically told Shanley "that Anderson was armed and had threatened to kill her." (*Id.* ¶ 12(d).) Despite their knowledge of domestic violence between Turczyn and Anderson, neither Shanley, New York State Police, nor Utica Police took any steps to arrest Anderson, investigate Turczyn's complaints, or follow-up with Anderson "as is the policy and protocol of the domestic violence unit." (*Id.* ¶ 14.)

On June 18, 2012, Shanley told Turczyn to seek an order of protection, which she attempted to do, but was told by an unknown person at the Oneida County Family Court to return the following day because the court was " 'too busy.' " (*Id.* ¶¶ 15–16.) The following day, Turczyn left a voice message for Shanley, explaining that she was unable to obtain an order of protection and that Anderson had a gun and planned to kill her that week. (*Id.* ¶¶ 16–18.) Despite her knowledge, "Shanley took no action." (*Id.* ¶ 17.) Shanley also mistakenly believed that Turczyn's issues with Anderson were outside of the purview of Utica Police and should, instead, be dealt with by New York State Police; however, "she did not inform any other police agency or take any action herself." (*Id.* ¶¶ 18, 19, 20.)

### B. *Procedural History*

Turczyn commenced this action by filing a complaint on October 31, 2013. (Dkt. No. 1.) Defendants thereafter moved to dismiss, (Dkt. No. 10.) In response, Turczyn filed an amended complaint as of right, which is now the operative pleading. (*See generally* Am. Compl.) In her amended complaint, Turczyn alleges the following causes of action: (1) a denial of substantive due process rights under the Fifth and Fourteenth Amendments due to deliberate indifference; (2) a *Monell* [2] claim against the City; (3) negligence; (4)

a "derivative action" on behalf of G.T.; and (5) negligent infliction of emotional distress. (*Id.* ¶¶ 37–74.) Defendants now move to dismiss the amended pleading pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 19.)

### III. *Standard of Review*

***2** The standard of review under Fed.R.Civ.P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D.N.Y.2010).

### IV. *Discussion*

**A. *Preliminary Matters***

At the outset, it is noted that some of Turczyn's claims are deemed abandoned by her failure to oppose their dismissal. *See Barmore v. Aidala,* 419 F.Supp.2d 193, 201–02 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause [the] plaintiff did not address [the] defendant's motion to dismiss with regard to [a particular] claim, it [wa]s deemed abandoned and ... dismissed."). In particular, Turczyn squarely opposed dismissal of her substantive due process claim as against Shanley, (Dkt. No. 20 at 8–12), and scarcely, but sufficiently to save the claim from dismissal for abandonment, offered reasons why her substantive due process claim as against the City should survive defendants' motion, (*id.* at 5–7). Aside from the substantive due process claim, Turczyn failed to offer any opposition to defendants' motion, which also sought dismissal of her pendant causes of action. (Dkt. No. 19, Attach. 6 at 31–40 & n. 15.) Accordingly, Turczyn's pendant state law claims, (Am.Compl.¶¶ 59–74), are dismissed.

Additionally, it is clear that the Police Department must be dismissed as urged by defendants, (Dkt. No. 19, Attach. 6 at 2 n. 2), because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy,* No. 1:10–cv–1390, 2014 WL 2176148, at *6 (N.D.N.Y. May 22, 2014) (internal quotation marks omitted). As such, all claims as against the Police Department are dismissed.

The court also notes that both parties have submitted certain evidence that is outside of the pleadings (Dkt. No. 19, Attachs. 3, 4; Dkt. No. 20, Attachs. 1, 2.) Beginning with defendants, they submitted a January 2, 2013 stipulation of discontinuance, which, on its face, purports to memorialize McGregor's agreement to withdraw the notice of claim filed on behalf of Turczyn and to discontinue with prejudice, (Dkt. No. 19, Attach.3), and a December 28, 2012 letter, which appears to memorialize a conversation regarding the discontinuation of legal action and execution of a stipulation, (Dkt. No. 19, Attach.4). Relying on a single out-of-Circuit decision, *see Raines v. Haverford Coll.,* 849 F.Supp. 1009, 1010 (E.D.Pa.1994), which does not appear directly to support their position nor does it give this court confidence that the kinds of documents at issue here were contemplated by that decision, defendants assert that the documents may be considered on their motion to dismiss as "part of the record of this case." (Dkt. No. 19, Attach. 6 at 25 n. 11.) Turczyn argues that defendants' reliance on the stipulation is inappropriate at this juncture, yet she offers the affidavit of McGregor, submitted to dispute the validity of the stipulation, (Dkt. No. 20, Attach.1), without any explanation as to why the court should or may consider it. (Dkt. No. 20 at 12–13.)

***3** The court has excluded from its consideration of this motion to dismiss the exhibits offered by defendants as well as the McGregor affidavit. *See* Fed.R.Civ.P. 12(d). The existence of some document or documents that may extinguish a plaintiff's claims, such as a release or stipulation of discontinuance, is an affirmative defense, *see Beede v. Stiefel Labs., Inc.,* No. 1:13–cv–120, 2014 WL 896725, at *3 (N.D.N.Y. Mar.6, 2014), and " '[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) ... if the defense appears on the face of the complaint,' " *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.,* 620 F.3d 137, 145 (2d Cir.2010) (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)).

Here, the stipulation defense is not apparent from the face of the amended complaint. Moreover, the court refuses to consider the documents in question as part of the record of this case, a proposition for which no in-Circuit authority has been offered nor has any been discovered by this court. As such, the documents offered by defendants, (Dkt. No. 19, Attachs.3, 4), are not properly before the court, and their argument that Turczyn's claims must be dismissed because of


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

those documents is rejected. McGregor's affidavit, (Dkt. No. 20, Attach.1), which was also improvidently submitted for consideration, is likewise excluded. The court now turns to the merits of defendants' arguments regarding the substantive due process and *Monell* claims.

**B. *Rule 8***

First, defendants argue that Turczyn's § 1983 due process claim is subject to dismissal under the Rule 8 plausibility analysis—specifically because of Turczyn's failure to allege facts supportive of a sufficient nexus between Shanley's omissions and Turczyn's death. (Dkt. No. 19, Attach. 6 at 23–24.) The court disagrees. The amended complaint plausibly alleges a causal connection between the conduct of defendants—their alleged conscience-shocking failure to protect Turczyn, (Am.Compl.¶ 49)—and her injuries, *i.e.,* the allegations plausibly suggest that defendants' acts were a substantial factor in bringing about Turczyn's injuries. *See Gierlinger v. Gleason,* 160 F.3d 858, 872 (2d Cir.1998) ("[I]n all § 1983 cases[ ] the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). Accordingly, this argument is rejected.

**C. *Rule 12(b)(6)***

Defendants argue that Turczyn has failed to state a substantive due process claim as against Shanley or the City. (Dkt. No. 19, Attach. 6 at 220, 26–31.) Defendants contend that Turczyn alleges only passive conduct on the part of Shanley that does not give rise to a substantive due process violation. (*Id.* at 10–12.) More generally, defendants assert that Turczyn has failed to plead facts to show "implicit prior assurances through repeated sustained inaction," and that, even if she did, the state action alleged does not rise to the level of conscience-shocking behavior. (*Id.* at 15–20.) Alternatively, defendants argue that Shanley is entitled to qualified immunity. (*Id.* at 20–23.) With respect to the City, defendants contend that Turczyn has failed to allege facts that support a claim of municipal liability. (*Id.* at 26–31.) For reasons explained below, defendants' motion is denied with respect to Turczyn's substantive due process claim against Shanley, but granted with respect to her *Monell* claim against the City.

***4** Only one relevant exception to the general rule that no substantive due process claim lies for a state's failure to protect an individual from private violence, *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), potentially applies in this case. That exception imposes liability for failure to protect where state actors in some way affirmatively assist "in creating or increasing the danger to the victim." *Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 428 (2d Cir.2009) (internal quotation marks and citation omitted); *see Pena v. DePrisco,* 432 F.3d 98, 110 (2d Cir.2005). "[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." *Okin,* 577 F.3d at 428 (quoting *Dwares v. City of N.Y.,* 985 F.2d 94, 99 (2d Cir.1993)). Moreover, when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." *Id.* at 428–29 (quoting *Pena,* 432 F.3d at 111)). In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Id.* at 429.

A successful substantive due process claim also requires that the plaintiff show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* at 431 (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). A hierarchy of intent provides guidance on the likelihood that a particular harm rises to the necessary level. Intentionally inflicted harms are most likely to meet the standard, while reckless and negligent inflictions of harm are each less likely, in graduated downward steps, to show conscience-shocking state action. *Id.* As for recklessly inflicted injuries, " '[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.' " *Id.* (quoting *Lewis,* 523 U.S. at 850). Accordingly, the inquiry is highly fact specific.

Unlike *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), or *Neal v. Lee County,* Civil Action No. 1:08CV262, 2010 WL 582437 (N.D.Miss. Feb.12, 2010)—cases in which police had limited interaction with either the victim or killer prior to the victim's demise, and upon which defendants rely for dismissal of the claim against Shanley, (Dkt. No. 19, Attach. 6 at 3–5, 7–8)—the allegations here go substantially farther. Turczyn alleges several occasions [3] when Shanley knew of

Anderson's threatening acts and did nothing, which arguably communicated to him prior assurances that there would be no penalty to pay for his conduct. (Am.Compl.¶¶ 12–13.) “This is so even though none of the defendants are alleged to have communicated the approval explicitly.” *Pena,* 432 F.3d at 111. *Okin* has specifically recognized the liability that may arise under these circumstances. *See* 577 F.3d at 428–29 (explaining that liability under § 1983 attaches when “state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others” (quoting *Pena,* 432 F.3d at 111)).

***5** The amended complaint also pleads facts that demonstrate, at this juncture, egregious behavior that shocks the contemporary conscience. As in *Okin,* the allegations here tend to show that Shanley, who was tasked with accomplishing certain goals related to curbing domestic violence, was deliberately indifferent as to whether or not Anderson would make good on his multiple threats against Turczyn's life over a twelve-month-period. (Am.Compl.¶ ¶ 10, 12.) These allegations sufficiently support that Shanley's affirmative conduct was the product of deliberate indifference that shocks the conscience, and would provide a reasonable jury with a valid basis to so find. *See Conradt v. NBC Universal, Inc.,* 536 F.Supp.2d 380, 394–95 (S.D.N.Y.2008).

Finally, Shanley is not entitled to qualified immunity at this juncture. Her argument on this issue is two-fold. First, Shanley asserts that no constitutional violation occurred, and, second, she claims that, even if a constitutional violation occurred, the right was not clearly established. (Dkt. No. 19, Attach. 6 at 20–23.) The first prong of the argument is easily swept aside by reference to the preceding paragraphs that explain that the amended complaint alleges a cognizable substantive due process violation. As for whether or not the right was clearly established, which is a prerequisite to qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this question has been resolved by the Second Circuit. On the issue, the court has explained that it is “clearly established,” under the state-created danger theory, “that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply.” *Okin,* 577 F.3d at 434. Accordingly, Shanley is not entitled to qualified immunity at this time.

As for the City, defendants assert that Turczyn has failed to plead a *Monell* claim because the amended complaint merely alleges legal conclusions. (Dkt. No. 19, Attach. 6 at 26–31.) With respect to Turczyn's allegation that the City failed to properly train or supervise its employees, defendants contend that the amended complaint is too conclusory, but that, even if adequately pleaded, Turczyn's municipal liability claim must nonetheless fail because she has not alleged deliberate indifference. (*Id.* at 29–31.)

It is well settled that “the inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.” *City of Canton, Oh. v. Harris,* 489 U.S. 378, 380, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is “stringent” and requires “proof that a municipal actor disregarded a known or obvious consequence of his action.” *Connick v. Thompson,* ––– U.S. ––––, ––––, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) “a policymaker knows ‘to a moral certainty’ that her employees will confront a given situation”; (2) “the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation”; and (3) “the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights.” *Walker v. City of N.Y.,* 974 F.2d 293, 297–98 (2d Cir.1992) (quoting *City of Canton,* 489 U.S. at 390 n. 10).

***6** Here, because Turczyn has failed to adequately plead that the City's failure to train and supervise amounted to deliberate indifference, she has failed to state a claim of municipal liability. The amended complaint uses the label “deliberate indifference” in reference to Turczyn's municipal liability claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion. (Am.Compl.¶¶ 45, 52.) Turczyn's pleading failure mandates dismissal of her *Monell* claim against the City. *See Gauthier v. Kirkpatrick,* Civil Action No. 2:13–cv–187, 2013 WL 6407716, at *10 (D.Vt. Dec.9, 2013) (dismissing failure to train *Monell* claim because the plaintiff failed to plead facts that supported the deliberate difference elements); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y.2012); *see also Worrell v. City of N.Y .,* No. 12–CV–6151, 2014 WL 1224257, at *13 (E.D.N.Y. Mar. 24, 2014).

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims alleged as against the City of Utica Police Dept. and the Clerk is directed to terminate the City of Utica Police Dept. from this action; and

**GRANTED** with respect to Turczyn's *Monell* claim against the City (Am.Compl.¶ ¶ 51–58), which is hereby **DISMISSED WITHOUT PREJUDICE,** and the Clerk is directed to terminate the City of Utica from this action; and

**GRANTED** with respect to all of Turczyn's pendant state law claims, (Am.Compl.¶ ¶ 59–74), which are hereby **DISMISSED;** and **DENIED** in all other respects; and it is further

**ORDERED** that the sole remaining defendant, Shanley, shall file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter in order to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6685476

## Footnotes

1 The facts are presented in the light most favorable to plaintiff.

2 *See Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3 In fact, Turczyn claims that she lodged five to ten complaints—of which Shanley was aware—with the Utica Police within the twelve months preceding the murder. (Am.Compl.¶¶ 12, 13.) So many occurrences may amount to "repeated [and] sustained inaction ... in the face of potential acts of violence." *Okin,* 577 F.3d at 428.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 981850
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,
v.
SYRACUSE POLICE DEPARTMENT, et al., Defendants.

Civil Action No. 5:18-CV-1471 (GTS/DEP)
|
Signed 01/07/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: Jeramie White, Pro se, 18-B-0311, Cayuga Correctional Facility, P.O. Box 1186, Moravia, NY 13118.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

***1** This is a civil rights action brought by *pro se* plaintiff Jeramie White, a New York State prison inmate, pursuant to 42 U.S.C. § 1983, against the Syracuse Police Department ("SPD") and five of its officers. In his complaint, plaintiff alleges that defendants violated his constitutional rights during the course of his arrest on February 13, 2017. Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for review. Based upon my consideration of those materials, I will (1) grant plaintiff's amended IFP application, (2) recommend dismissal of his claim against the SPD with leave to replead, and (3) recommend that his complaint otherwise be accepted for filing.

I. BACKGROUND

Plaintiff commenced this action on or about December 20, 2018. Dkt. No. 1. According to plaintiff, he and two friends were on their way to play indoor basketball when their vehicle was pulled over for a traffic infraction. *Id.* at 4; Dkt. No. 1-1 at 4. Plaintiff alleges that after the stop, defendant William Kittle forcibly removed White from the vehicle and that Kittle, in addition to defendants Abraham Mamoun and Shawn Hauck, proceeded to use excessive force against him during the course of his arrest. Dkt. No. 1 at 4-5, 6-7; *see also* Dkt. No. 1-1 at 4, 8. Plaintiff further alleges that defendants Altimonda and Fiorini were present and had an obligation to intervene and prevent the unlawful use of force, but failed to do so. *Id.* at 5, 7.

Plaintiff was ultimately arrested and charged with resisting arrest, in violation of N.Y. Penal Law § 205.30, and second-degree obstruction of governmental administration, in violation of N.Y. Penal Law § 195.05. Dkt. No. 1-1 at 4. As relief, plaintiff seeks compensatory and punitive damages in the amount of $1,000,000. Dkt. No. 1 at 8.

A. Plaintiff's Amended IFP Application [1]

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [2] Because I conclude that plaintiff meets the requirements for IFP status, his amended application for leave to proceed without prepayment of fees is granted. [3]

B. Sufficiency of Plaintiff's Complaint

1. Governing Legal Standard

***2** Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also* *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

2. Analysis of Plaintiff's Claims

***3** Although a municipality is subject to suit pursuant to section 1983, *see* *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See* *Krug v. Cnty. of Rensselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F. Supp. 148 (S.D.N.Y. 1995) ); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *see also* *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department."). Although I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the City of Syracuse in place of the SPD, plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the City of Syracuse. Accordingly, I recommend dismissal of plaintiff's claims asserted against the SPD.

With respect to his remaining claims, although plaintiff makes passing reference to his rights arising under the Eighth and Fourth Amendments, *see* Dkt. No. 1 at 6, it is clear from the factual allegations that he is asserting claims for excessive force and the failure to intervene arising under the Fourth Amendment. *See generally* Dkt. No. 1; *see also* *Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures."). In light of the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and the

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

individual officer defendants should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure. [4]

C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, while I recommend dismissal of plaintiff's claim against the SPD, plaintiff could potentially amend his complaint to assert a cognizable cause of action against a defendant, such as the City of Syracuse, which is amenable to suit. Accordingly, I recommend that plaintiff be granted leave to amend his complaint. If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

II. SUMMARY, ORDER, AND RECOMMENDATION

***4** Having reviewed plaintiff's amended application for leave to proceed in this action IFP, I conclude that he has met the applicable requirements for leave to proceed without prepayment of fees, and will therefore grant his application. Turning to the merits of his complaint, to the extent that it names five police officers and alleges a violation of 42 U.S.C. § 1983, I conclude that those claims are not subject to dismissal at this procedural juncture. I recommend a finding, however, that plaintiff's claim against the SPD is legally deficient and subject to dismissal, but that plaintiff should be afforded an opportunity to amend with respect to that claim. Accordingly, it is hereby

ORDERED that plaintiff's amended application for leave to proceed in this action without prepayment of fees (Dkt. No. 6) is GRANTED; and it is further

ORDERED that plaintiff's original application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is DENIED as moot; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be accepted for filing with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini; and it is further

RECOMMENDED that plaintiff's remaining cause of action against the Syracuse Police Department be otherwise DISMISSED with leave to replead within thirty days of the issuance of an order adopting this recommendation; and it is further

RECOMMENDED that, in the event plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 981850

## Footnotes

1 Plaintiff filed both an original and amended motion to proceed in this action IFP. Dkt. Nos. 2, 6. While the two motions contain slightly different information concerning plaintiff's financial status, only the amended motion contains the required certification from an official at the correctional facility in which plaintiff is confined. *Compare* Dkt. No. 3 *with* Dkt. No. 7. Accordingly, plaintiff's original IFP application is denied as incomplete.

2 The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

3 Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

4 The court expresses no opinion concerning whether plaintiff's claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.

5 If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.